[No. 30930. Department One. August 18, 1949.]

DONALD GALE SMITH, *by Edythe Hardie, his Guardian ad Litem, Appellant,* v. CHARLES H. LEBER, JR., *et al., Respondents.*

BEN NOONAN, *as Administrator, Appellant,* v. CHARLES H. LEBER, JR., *et al., Respondents.*[1]

[1]Reported in 209 P. (2d) 297.

*Seltzer & Seltzer* and *Oliver R. Ingersoll*, for appellants.

*W. E. Du Puis*, for respondents.

STEINERT, J.—These actions were severally commenced by plaintiff Donald Gale Smith, a minor, through his guardian *ad litem*, Edythe Hardie, and plaintiff Ben Noonan, as administrator of the estate of Joseph Charles Noonan, deceased, against the defendants named therein, Charles H. Leber, Jr., and his wife, impleaded as Jane Doe Leber, doing business together as Leber Pole and Piling Co., and Edward Reise, their alleged employee. By the two actions, plaintiffs respectively sought to recover damages for personal injuries sustained by Donald Gale Smith and for the death of Joseph Charles Noonan, resulting from a collision between a truck, which had been leased to the defendants Leber and was being driven at the time of the accident by defendant Edward Reise, and an automobile in which the surviving minor plaintiff, Smith, and the decedent, Noonan,

were passengers. The alleged cause of this collision was the negligent operation of the truck by the defendant Reise while in the employ of, and while acting within the course and scope of his employment for, the defendants Leber.

No service of summons having been made on Reise, and his whereabouts being at the time of the trial unknown, the actions were dismissed as to him.

To each of the complaints the defendants Leber answered, admitting that they were lessees of the truck in question and that Reise was driving it at the time of the accident, but disclaiming any knowledge as to the alleged negligence of Reise, and denying that Reise was, at the time of the occurrence, in their employ or within the scope of any such employment. Other denials and affirmative defenses were interposed, but none of these are relevant to the issues involved in this appeal.

The two actions were consolidated for trial, a jury was impaneled, and, at the conclusion of the evidence, the trial court submitted the case to the jury, along with a special interrogatory to be answered in conjunction with the rendition of the general verdicts. The jury, by its answer to the special interrogatory, found that Reise was in the employ of the Lebers at the time of the accident and accordingly returned verdicts in favor of both plaintiffs, in varying amounts.

The defendants Leber timely filed their motion for judgment notwithstanding the verdicts, and the trial court, after hearing argument thereon, granted the motion and entered judgments dismissing plaintiffs' consolidated action, with prejudice. Plaintiffs appealed.

The only question before this court upon the appeal is whether there was evidence legally sufficient to support findings by the jury that Reise was in the employ of respondents, Charles H. Leber, Jr., and his wife, Jane Doe Leber, and that, at the time of the accident, he was in the course of that employment.

The rule is well established in this jurisdiction that a motion for judgment notwithstanding the verdict admits

the truth of the evidence of the party against whom the motion is made and all inferences reasonably to be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Williams v. Hofer,* 30 Wn. (2d) 253, 191 P. (2d) 306; *Bleyhl v. Tea Garden Products Co.,* 30 Wn. (2d) 447, 191 P. (2d) 851; and cases cited therein.

It is equally well settled that, in a judicial ruling upon such a motion, no element of discretion is involved, and the motion can be granted only when it can be held as a matter of law that there is no evidence nor reasonable inference therefrom to sustain a verdict for the party against whom the motion is made. *Graham v. Police & Firemen's Ins. Ass'n,* 10 Wn. (2d) 288, 116 P. (2d) 352; *Simmons v. Cowlitz County,* 12 Wn. (2d) 84, 120 P. (2d) 479; *Williams v. Hofer, supra; Bleyhl v. Tea Garden Products Co., supra.*

A cognate rule, also expressed and followed by this court, is that a motion for judgment notwithstanding the verdict, interposed by the defendant in an action, is to be considered solely in the light of the plaintiff's evidence. *Mitchell v. Cadwell,* 188 Wash. 257, 62 P. (2d) 41.

With the foregoing rules in mind, we proceed to an examination of the facts and circumstances pertinent to the narrow issues posed on this appeal, viewing the evidence in the light most favorable to the plaintiff appellants. Most of these facts and circumstances are undisputed; it is the conflict of permissible inferences which forms the basis of controversy here.

The collision out of which these actions arose occurred at about 2:30 a.m., on Sunday, April 18, 1948, just within the easterly city limits of Yelm, Washington. A Chevrolet truck, which had for some time been in the possession of respondents, as lessees thereof from a firm in Kent, Washington, and which had previously been used by respondents in connection with a certain logging operation, was equipped with a large crane, or hoisting device, denominated a "cherry picker," fully rigged and attached to the forward

extremity of the motor vehicle. This truck, which was being driven at the time of the accident by Edward Reise, was proceeding in a southeasterly direction on secondary state highway 5-H, when it collided with a Ford automobile in which appellant Donald Gale Smith and the decedent, Joseph Charles Noonan, were passengers. As a result of the collision, Noonan was killed almost instantly, and Smith sustained serious injuries.

For a period of about three weeks just prior to the accident, respondents had been conducting a logging operation in the vicinity of the town of Vail, Washington, about twelve or thirteen miles distant from Yelm, and it was in connection with this operation that respondents had rented the truck equipped with the "cherry picker." During the progress of the work at Vail, respondents' employees appear to have made arrangements for their room and board at Yelm.

Edward Reise, who lived in Black Diamond, Washington, had been employed intermittently by respondents over a period of approximately three years. He had worked at the Vail logging operation for about ten days just prior to its completion. He was not hired originally as a truck driver for respondents, nor did he ordinarily serve in that capacity, but, rather, performed the duties of "peeler" and "loader" while on the job. He was compensated for his services on the hourly basis, although, since he was employed only intermittently, he was given some special consideration respecting the time at which his checks for wages were to be made available to him.

The actual work at the place of the logging operation at Vail was completed sometime on Saturday afternoon, April 17, 1948, less than a full day before the accident occurring early on Sunday morning. The only members of respondents' crew who worked at Vail on this particular Saturday were Reise and one Frank Holsteine, and possibly one other unidentified individual. Holsteine was respondents' job foreman, having full charge of, and authority in, the conduct of the Vail operation.

Sometime during this same Saturday, respondent Charles H. Leber, Jr., to whom we shall refer simply as Leber, communicated with Holsteine by telephone and, in the course of their conversation, Leber directed Holsteine to have the truck returned to Kent, Washington, "as soon as" the job was completed at Vail.

Upon completion of the logging operation in the vicinity of Vail, Reise and Holsteine proceeded to Yelm, Reise driving the truck equipped with the "cherry picker," and Holsteine accompanying in his own car, which he had brought with him to the job. Loaded upon the truck was a flagpole which Leber had ordered to be delivered as a donation or gratuity to one Dan Carew, the town marshal of Yelm. Upon arrival in Yelm, at about 4:30 p.m., Holsteine and Reise made delivery of the flagpole to Carew. At that time, also, Reise was driving the truck.

After the flagpole had been delivered, the truck was driven to, and parked in, a vacant lot in Yelm, it being impossible, due to the height of the fully-rigged crane, to effect its admittance into any local garage. The truck had no ignition lock, and no precaution was taken against its unauthorized removal, other than parking it some distance from the main street.

Shortly after the truck had been parked, Holsteine delivered final pay checks to certain members of respondents'. logging crew, covering the wages due them at the end of their employment on the preceding day, which was Friday; Reise also received a check at that time, in payment for services rendered by him up to and through the same Friday. He was not, however, paid for the work he had done on this Saturday, the day on which he drove the truck to Yelm and helped deliver the flagpole.

That evening, at about six o'clock, Reise and Holsteine ate dinner together at the restaurant which they customarily patronized in Yelm. Thereafter, they separated, and, when they again met at about 7:45 p.m., Holsteine noticed that Reise had been drinking. Holsteine testified that, at that time, he admonished Reise, in the presence of Dan

Carew, upon the streets of Yelm, not to "touch" or drive the truck that night. Carew testified to the same effect. The only explanation given for this admonition, however, was the apparent intoxication of Reise, not that Reise was no longer in the employ of the respondents. Sometime during that same evening Reise and Holsteine for a short while attended a public dance which was being given in Yelm.

Thereafter, at about 11:00 p.m., Holsteine declared his intention to, and actually did, leave Yelm for his home near Black Diamond, Washington, which is about fourteen miles east of Kent. Just before leaving, he said "goodbye" to the owners of the restaurant where he had customarily taken his meals, but he made no mention at that time of any plan to return to Yelm the next day, as he later testified it was his intention to do.

Sometime within the next two or three hours, Reise apparently removed the truck and drove it in the direction of Kent, but had progressed only a short distance, within the city limits of Yelm, when the collision involved in this action occurred. About three hours later that morning, at the city hall in Yelm, and in the presence of two police officers and the county coroner, Reise made a full written statement, giving his version of how the accident occurred. Upon the issues involved in this appeal, the statement read:

"Charles H. Leber phoned Holsteine at noon on Saturday at the Nisqually Valley Newspaper office and told him to have the truck driven to Kent for him. Leber is my employer. Our job was completed on Saturday on Weyerhauser's stumpage about six miles from Rainier. I talked to my foreman, Frank Holsteine, about 10:30 P.M. at the dance and he told me to take the truck into Kent and I said I would."

The written statement was offered and admitted in evidence, over respondents' objection.

The foregoing were, in substance, the facts and circumstances preceding and leading up to the collision, or transpiring shortly thereafter, as the jury was entitled to find them from the evidence adduced and admitted.

In so far as the trial court's instructions pertain to the issues involved upon this appeal, the jury was required, in order to return verdicts in favor of appellants, to find that Reise was in the employ of respondents and that, at the time of the accident, he was driving the truck within the course and scope of that employment. By its instruction No. 11, the trial court told the jury that, if it found that Reise was operating the truck contrary to the orders of the respondents *and* that he was *wholly* unauthorized, at the time of the accident, to do so, it should find for the respondents.

This instruction was not excepted to by respondents and, therefore, became the law of the case on that issue. Consequently, if there was evidence or reasonable inferences from evidence to support the findings of the jury on the matters covered by the instruction, the judgments notwithstanding the verdicts must be reversed.

It is readily apparent that, in cases such as this, the existence and scope of an employer-employee relationship are quite frequently matters within the peculiar knowledge of the parties to that relationship. For this reason, third persons, seeking to impute liability to an alleged employer under the doctrine of *respondeat superior*, must necessarily rely to a considerable extent upon circumstantial evidence to prove the existence and scope of an alleged agency.

Circumstantial evidence is often the most satisfactory in the ascertainment of a fact and is quite as conclusive in its convincing power as is direct evidence. *State v. Ito*, 129 Wash. 402, 225 Pac. 63; *Tucker v. Brown*, 20 Wn. (2d) 740, 150 P. (2d) 604.

While agency is never presumed, but must be proved, it is not necessary that it be established by direct evidence. It may be proved by facts and circumstances, or, in other words, by circumstantial evidence. *Wills v. Armond*, 115 Wash. 73, 196 Pac. 649; *Stockdale v. Horlacher*, 189 Wash. 264, 64 P. (2d) 1015; *Franklin v. Gilbert Ice Cream Co.*, 191 Wash. 269, 71 P. (2d) 52; 2 Am. Jur. 356, Agency, § 449; 57 C. J. S. 405, Master and Servant, § 615.

Conceding, for the sake of argument, that there was no *direct* evidence sufficient of itself to establish that Reise was the agent or employee of the respondents at the exact time of the accident here in question or that he was then acting within the course or scope of such employment, we are nevertheless of the opinion that, under all of the circumstances surrounding the particular occasion and the permissible inferences to be drawn therefrom, there was evidence to support the findings of the jury on those issues.

Although, as shown by the evidence, Reise's duties as "peeler" or "loader" had terminated upon the completion of respondents' logging operations at Vail, there are many circumstances, some of which will be set out herein, to indicate, and from which the jury could reasonably have found, that Reise had undertaken, at Holsteine's request or direction, the additional duty of driving the rented truck to Kent, pursuant to Leber's telephone conversation with Holsteine on Saturday morning, April 17, 1948. These circumstances are: (1) The truck had to be returned to Kent, and Leber had ordered that this be done "as soon as" the job was completed at Vail; (2) of the three men who were still on the job at Vail on Saturday, Reise was the logical one to drive the truck, for Holsteine had his own car there, which he intended to, and did, drive to Yelm and later to his home near Black Diamond, and the third man, so far as the record shows, was driving another truck; (3) Holsteine bade "goodbye" to the restaurant people in Yelm on Saturday, saying that he was going home, which he did; if he did not intend to return to Yelm, someone other than he would have had to drive the truck to Kent; on the other hand, if he did intend to return to Yelm to take charge of the truck, someone else would then have had to drive his automobile to Kent; (4) after Holsteine left Yelm in his own car, going to his home near Black Diamond, there remained at Yelm only one member of respondents' former crew who had not been paid off in full or who had had any connection with the truck, and that was Reise; all the other employees had been fully paid and admittedly had no further employee

relationship with respondents; (5) Reise did, in fact, undertake to drive the truck, albeit late at night and apparently while under the influence of liquor; (6) there is no suggestion that the route pursued by Reise up until the time of the accident was any other than would normally be used by one proceeding from Yelm to Kent; (7) Reise, himself, had originally been employed by respondents at Kent, and lived in Black Diamond, which was not far from Kent; having driven the truck from Vail to Yelm, it was the natural thing, under the circumstances, that he should be employed to take it the rest of the way; and (8) Reise's written statement definitely declares that Holsteine, respondents' foreman, directed him "to take the truck into Kent and I said I would."

In light of the foregoing facts and circumstances, the jury was not bound to find, as respondents contend, that Reise was "through" and "free" to go as and where he pleased after 4:30 p.m. on the Saturday preceding the accident early on Sunday morning. Leber admitted at the trial that Reise had not been paid for the work he performed for respondents on Saturday, and from this the jury could reasonably infer that the intention was that Reise was to be given his final pay check upon delivery of the truck at Kent. In any event, the existence of respondents' obligation for the unpaid amount of Reise's wages provides a fair inference that relations between respondents and Reise were not completely terminated as of the time of the completion of the actual logging operations at Vail, or as of the time when the truck was parked in the vacant lot at Yelm.

Another piece of evidence which we have not as yet recounted, but to which we should refer at this point, is contained in the testimony of appellant Ben Noonan. He testified that, sometime after the accident in question, he had a conversation with Leber in the office of the prosecuting attorney for Thurston county, and in that conversation Leber stated that he had hired Reise to bring the truck back to Kent, but that he "didn't know he [Reise] was going to be

drunk." This portion of Noonan's testimony went in without objection by respondents.

■ It is true, as respondents argue, that evidence of verbal declarations of an adverse party, where there are no corroborating facts or circumstances, is not sufficient of itself to take the case to the jury. *Ludberg v. Barghoorn*, 73 Wash. 476, 131 Pac. 1165; *Jones v. Harris*, 122 Wash. 69, 210 Pac. 22; *Low v. Colby*, 137 Wash. 476, 243 Pac. 18, 247 Pac. 475; *Commercial Importing Co. v. Wear*, 180 Wash. 669, 41 P. (2d) 777; *Kennett v. Federici*, 200 Wash. 156, 93 P. (2d) 333. Presumably, such evidence is entitled to even less weight when testified to by a party adverse in interest to the alleged declarant.

Be that as it may, however, the criticism to be made of such evidence goes more to its weight than to its admissibility. Moreover, whatever may be the weight to be accorded to this testimony, in the instant case, the substance of the alleged declaration was adequately corroborated by fully competent evidence of other facts and circumstances.

■ In summary, then, bearing in mind that it is not the office of this court, upon a review of a ruling on a motion for judgment notwithstanding the verdict, to express an opinion with respect to the preponderance of the evidence, we may state that the issue relating to the *fact of employment* boils down to a conflict between fair inferences from evidentiary facts and circumstances, on the one hand, and, on the other, a denial, by way of bare assertion on the part of Leber and Holsteine that the *actual* facts were not as these evidentiary facts and circumstances indicated. It was the province of the jury to evaluate and resolve this conflict, and it did so in favor of appellants.

Respondents have urged, in their brief, that there was no evidence to support a finding of "agency" with respect to Reise's operation of the truck at the time of the accident. While respondents' contentions on this appeal are directed largely to the evidence relating to the *fact of employment* of Reise, their argument seems also to indicate an attack upon the finding on the part of the jury that Reise was, at

the time of the accident, within the *course and scope* of such employment.

The basis for this argument is found in the testimony of Holsteine, in varying degrees corroborated by the testimony of other of respondents' witnesses, to the effect that, on the night before the accident, he had expressly forbidden Reise to drive the truck.

Assuming that the jury was required to, and did, believe such to have been the fact, we still are unable to accept respondents' argument and point of view. The same evidence which we have hereinbefore held sufficient to support a finding that Reise was employed to return the truck to Kent for respondents is likewise sufficient to show that the collision occurred while Reise was in the scope of such employment, unaffected by the fact, which could reasonably be inferred from the evidence, that Reise had been ordered not to drive *while in a drunken condition.*

Respondents have cited no case wherein it was held that an express prohibition against the doing of a certain act absolves an employer from liability, where such an act was done in conjunction with other acts which *were* within the scope of the duties an employee has been instructed to perform. In fact, the universal rule appears to be to the contrary, as is indicated by the following discussion appearing in 35 Am. Jur. 993, Master and Servant, § 559:

"The courts are generally agreed that an employer may be held accountable for the wrongful act of his employee committed while acting in his employer's business and within the scope of his employment, although he had no knowledge thereof, or had disapproved it, or even expressly forbidden it. Also, as a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer. . . . In short, when it is asserted that the employee acted without the knowledge of the employer and without his approval, or in violation of his orders and instructions, the question of liability, as in other cases, is determined by whether the employee was in fact acting within the scope of his implied

or apparent authority. If he was not, the employer is not to be held liable, although a prohibition by the employer may be a factor in determining, in a doubtful case, whether the act of the employee was incidental to the employment so as to be within the scope thereof."

In *Roletto v. Department Stores Garage Co.,* 30 Wn. (2d) 439, 191 P. (2d) 875, we quoted with approval the following statement from *McGrail v. Department of Labor & Industries,* 190 Wash. 272, 67 P. (2d) 851:

"The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests."

▮▮▮ Whether a servant was acting within the scope of his employment at the time he caused an injury to a third person, is a question for the jury to determine, where the evidence is conflicting and more than one inference can reasonably be drawn therefrom.

The jury in this instance was not required to find that the admonition given Reise by Holsteine amounted to a *termination* of the understanding between them that Reise was to drive the truck to Kent, that being the understanding, according to appellants' evidence, between Reise and Holsteine before Reise's alleged physical condition became apparent to Holsteine; the admonition might as easily be construed as a mere order that it was not to be done under certain *conditions.* Under the rules above stated, Reise would be no less within the scope of his employment merely because he may have violated instructions with reference to the execution of the duty which he was employed to perform. The jury could well find that Reise was acting in the furtherance of respondents' interests pursuant to their *general* instructions. Furthermore, the jury might well have believed that the very reason for giving such an admonition was the fact that it had been contemplated and agreed that Reise *would* drive the truck to Kent; for, otherwise, Reise's

condition would not have particularly concerned Holsteine.

It is our considered opinion that, under all the evidence above set forth, it cannot be said as a matter of law that Reise was not, at the time he collided with the car in which the minor appellant and the decedent were riding, employed by respondents; nor can it be said that Reise was not, at that time, acting within the scope of his employment.

During the trial, and over respondents' objections, there was admitted in evidence, as part of the *"res gestae,"* the previously mentioned statement of Reise, in writing signed by him, to the effect that Leber was Reise's employer and that Holsteine, pursuant to Leber's orders, had instructed Reise to drive the truck to Kent and that Reise was complying with that instruction at the time of the accident. No deposition of Reise was ever taken, and, as we have hereinbefore indicated, he was not available at the trial.

If, as respondents contend, the trial court erred in admitting this evidence, the motion for judgment notwithstanding the verdicts was obviously not the proper method for seeking correction of the alleged error occurring during the trial. Such errors are reached through motion for new trial, under Rem. Rev. Stat. (Sup.), § 399 [P.P.C. § 78-3].

Had respondents moved not only for judgment notwithstanding the verdicts but also, in the alternative, for new trial, they could then have availed themselves of the provisions of Rule of Practice 14, 18 Wn. (2d) 42-a. Under that rule, the superior court would have been required to pass upon the motion for new trial, such ruling not to become effective, however, until the order granting the motion for judgment notwithstanding the verdicts had thereafter been reversed, vacated, or set aside in the manner provided by law. That rule contains this further provision, of which respondents might, under the prescribed practice, have availed themselves:

"An appeal to the supreme court from a judgment granted on a motion for judgment notwithstanding the verdict shall, of itself, without the necessity of a cross-appeal, bring up for review the ruling of the trial court on the motion for a

new trial; and the supreme court shall, if it reverses the judgment entered notwithstanding the verdict, review and determine the validity of the ruling on the motion for a new trial."

Where, however, no alternative motion for a new trial has been made, and where other competent evidence supports the verdict of the jury, this court will not rule on a contention that certain evidence was improperly admitted, and then speculate as to the possible effect of such evidence upon the minds of the jury in reaching the verdict it did.

Under the strict rules pertaining to the consideration and determination of motions for judgment notwithstanding the verdict of the jury, there was, in this case, sufficient evidence, the competency of which has not been questioned, to support the verdicts of the jury.

The judgments entered by the trial court notwithstanding the verdicts of the jury are reversed, and the cause remanded with direction to the court to reinstate the verdicts and to enter judgments thereon in favor of each appellant in accordance therewith.

JEFFERS, MALLERY, SCHWELLENBACH, and HILL, JJ., concur.