222 P.3d 1208 (2009)
167 Wash.2d 531
Bianca FAUST, individually and as guardian, of Gary C. Faust, a minor, and Bianca Celestine Mele, Bryan Mele, Beverly Mele, and Albert Mele, Petitioners,
v.
Mark ALBERTSON, as Personal, Administrator for the Estate of Hawkeye Kinkaid, deceased, Defendant,
Bellingham Lodge, Loyal Order of Moose, Inc., Alexis Chapman, Respondents,
Moose International, Inc., John Does (1-10) (fictitious names of unknown individuals and/or entities) and ABC Corporations (1-10) (fictitious names of unknown individuals and/or entities), Defendants.
No. 81356-6.
Supreme Court of Washington, En Banc.
Argued May 12, 2009.
Decided July 16, 2009.
As Amended August 6 & November 30, 2009.
Reconsideration Denied December 1, 2009.
*1210 Philip Albert Talmadge, Emmelyn Hart-Biberfeld, Talmadge/Fitzpatrick, Tukwila, WA, Steven John Chance, Attorney at Law, Bellingham, WA, for Petitioners.
Russell Charles Love, Thorsrud Cane & Paulich, William Edward Fitzharris Jr., Preg O'Donnell & Gillett PLLC, Seattle, WA, Paul V. Esposito, Clausen Miller, Chicago, IL, for Respondents.
Deborra E. Garrett, Zender Thurston PS, Bellingham, WA, Leslie Moore, Irving, TX, for Amicus Curiae Mothers Against Drunk Driving.
George M. Ahrend, Dano Gilbert & Ahrend PLLC, Moses Lake, WA, Bryan Patrick Harnetiaux, Spokane, WA, for Amicus Curiae Washington State Association for Justice Foundation.
OWENS, J.
¶ 1 Commercial sellers of alcoholic beverages may be liable for damages to a third party suffered at the hands of a drunk driver *1211 on a theory of negligent overservice of a person apparently under the influence of alcohol. This case calls for examination and clarification of the evidence necessary to properly establish a triable issue of fact regarding negligent overservice under RCW 66.44.200(1).

FACTS
¶ 2 Hawkeye Kinkaid died the night his car struck the car driven by Bianca Faust. Prior to the accident, Kinkaid spent most of the afternoon with his girlfriend, Alexis Chapman, and went with her to the Bellingham Moose Lodge at 4:30 p.m. Shortly after Kinkaid left the lodge, he drove his car across the center line of La Bounty Road where it struck Faust's vehicle. The force of the collision injured Faust and her passengers and rendered one passenger paraplegic.
¶ 3 While at the lodge, Kinkaid was served alcohol by Chapman. Evidence submitted at trial indicated that Kinkaid had not been drinking before his arrival at the lodge. According to statements by Chapman to others, prior to the accident Kinkaid had been drinking for a prolonged period of time, had become belligerent and argumentative with her, and had become too "tipsy" to be driving. 2 Verbatim Report of Proceedings (VRP) at 265. In addition, Chapman later told a friend of Kinkaid's that he was so drunk that night that she had to cut him off.
¶ 4 Kinkaid was intoxicated at the time of the accident. A toxicology report showed that Kinkaid's blood alcohol content (BAC) was .14 one hour after the accident. Tests performed during Kinkaid's autopsy revealed a BAC of .09, still above the legal limit after loss of blood and replacement of some fluids. Kinkaid's stomach contained undigested alcohol. According to Faust's forensic consultant, Kinkaid had likely imbibed 21 12-ounce beers or 30 ounces of 80-proof alcohol and probably achieved what he estimated was a.32 BAC at the time of the collision.
¶ 5 Faust sued Kinkaid's estate, the lodge, and Chapman, claiming negligence on a variety of theories. In 2003, witness Ron Beers had signed a declaration under penalty of perjury. In 2004, Beers was deposed, again under penalty of perjury, and gave conflicting accounts of the events on the night of the accident. By the time of trial, Beers lived outside of Clallam County so the trial court read his deposition testimony to the jury. The trial court stated:
Part of the deposition testimony concerns a written statement given by the witness to the Plaintiffs' investigator which was attached to the deposition. This instruction concerns that written statement. If you give any consideration to the written statement, you may only consider it in deciding what weight and credibility to give Mr. Beers' deposition testimony, and for no other purpose.
6 VRP at 905-06.
¶ 6 At trial, the court allowed Faust's attorney, Steve Chance, to ask defense witness Mac Pope if he had been drinking prior to showing up for court that morning, which Pope denied. Chance asked Pope, "It seems like there's alcohol on your breath?" 9 VRP at 1262. The trial judge later noted that he "was of the distinct impression when [Pope] sat down that he was probably consuming alcohol, and that's up to the jury to judge his credibility." 10 VRP at 1354. In closing, Chance told the jury, "I'm pretty confident that I'm not the only person in this court-room that detected alcohol on Mac Pope's breath at 9:00 in the morning." 12 VRP at 1884-85.
¶ 7 Also at trial, Faust's attorney James DeZao asked John Leibrant, a member of the lodge, about the nature of the organization, including its oath, whether the organization is "sacred," and the members' attire. 4 VRP at 527-28, 531, 535. DeZao also asked a lodge administrator whether the lodge voluntarily turned over a membership list and whether the lodge deleted phone numbers from that list. At closing, Chance argued that "the members of the lodge are required to take an oath that essentially says, one for all, like a family, fierce protector defending the circle, loyal companion, sacred organization," and that the lodge would not turn over a membership list until after a court order. 12 VRP at 1869, 1873-74.
¶ 8 The jury found for Faust, and the trial court entered a judgment of $14 million. *1212 The trial court denied several posttrial motions brought by the defendants, including a motion for judgment as a matter of law. The lodge and Chapman appealed and Faust cross-appealed. The Court of Appeals reversed and vacated the judgment against the lodge and Chapman and denied Faust's cross-appeal. Faust v. Albertson, 143 Wash. App. 272, 276, 178 P.3d 358 (2008). Faust petitioned for this court's review, and we granted review to consider a potential conflict between the Court of Appeals decision and our prior cases involving the standard of civil liability for alcohol overservice and also to consider several evidentiary issues. Faust v. Albertson, 164 Wash.2d 1025, 196 P.3d 136 (2008).

ANALYSIS

A. Standard and Scope of Review

¶ 9 This court accepted review to resolve two questions. First, under RCW 66.44.200(1), must a plaintiff produce direct, point-in-time evidence that the tortfeasor was "apparently under the influence of liquor" when he was last served? Second, did the Court of Appeals err when it found no competent evidence creating an issue of material fact and reversed the trial court's denial of a defense motion for judgment as a matter of law?
¶ 10 Faust challenges as error the Court of Appeals' reversal of the trial court's denial of judgment as a matter of law. Judgment as a matter of law under CR 50 is appropriate only when no competent and substantial evidence exists to support a verdict. Delgado Guijosa v. Wal-Mart Stores, Inc., 144 Wash.2d 907, 915, 32 P.3d 250 (2001). In reviewing a ruling on a motion for a judgment as a matter of law, we engage in the same inquiry as the trial court. Stiley v. Block, 130 Wash.2d 486, 504, 925 P.2d 194 (1996). One who challenges a judgment as a matter of law "admits the truth of the opponent's evidence and all inferences which can reasonably be drawn [from it]." Davis v. Early Constr. Co., 63 Wash.2d 252, 254, 386 P.2d 958 (1963). We interpret the evidence "against the [original] moving party and in a light most favorable to the opponent." Id. A judgment as a matter of law requires the court to conclude, "as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party." Indus. Indem. Co. of the Nw. v. Kallevig, 114 Wash.2d 907, 915-16, 792 P.2d 520 (1990). However, the court "must defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." State v. Hernandez, 85 Wash. App. 672, 675, 935 P.2d 623 (1997). "Overturning a jury verdict is appropriate only when [the verdict] is clearly unsupported by substantial evidence." Burnside v. Simpson Paper Co., 123 Wash.2d 93, 107-08, 864 P.2d 937 (1994).

B. The Necessary Evidence to Establish a Triable Issue of Fact on Alcohol Overservice

¶ 11 RCW 66.44.200(1) prohibits the sale of alcohol to "any person apparently under the influence of liquor." Businesses that violate the statute by serving drunk drivers will be civilly liable to third-party victims for damages caused by their patron. Barrett v. Lucky Seven Saloon, Inc., 152 Wash.2d 259, 262-63, 96 P.3d 386 (2004). In Barrett, this court recognized that the older "obviously intoxicated" common law standard[1] had been replaced by "apparently under the influence." Id. at 274-75, 96 P.3d 386. Further, this court recognized that the two standards differ meaningfully. Id. at 269, 96 P.3d 386.
¶ 12 The question presented here boils down to whether the evidentiary burden to establish a triable issue of fact should be lowered concomitantly with the standard of civil liability. Typically, plaintiffs "may establish any fact by circumstantial evidence." Tabak v. State, 73 Wash.App. 691, 696, 870 P.2d 1014 (1994). Before juries, circumstantial and direct evidence are viewed as equivalently valuable. See 6 WASHINGTON SUPREME *1213 COURT COMMITTEE ON JURY INSTRUCTIONS, WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL § 1.03, at 22 (2005). Nonetheless, the Court of Appeals held that plaintiffs must provide specific point-in-time observational evidence of the tortfeasor's appearance close to the time of service in order to send the question to the trier of fact. Faust, 143 Wash.App. at 281-82, 178 P.3d 358. In Barrett, we declared that our recognition of the statutory standard for civil liability did not "upset [any] established precedent." 152 Wash.2d at 274, 96 P.3d 386; see Faust, 143 Wash.App. at 280 n. 3, 178 P.3d 358 ("the required evidence does not appear to have changed"). Thus, cases interpreting the evidentiary burden plaintiffs must carry to defeat a defense motion for summary judgment (or judgment as a matter of law) remain good law.[2] A review of those cases reveals a consistent insistence by this court that evidence on the record must demonstrate that the tortfeasor was "apparently under the influence" by direct, observational evidence at the time of the alleged overservice or by reasonable inference deduced from observation shortly thereafter.
¶ 13 This court has held that a combination of postaccident observational evidence, expert testimony, and BAC were insufficient evidence to survive a summary judgment motion. Purchase v. Meyer, 108 Wash.2d 220, 223, 737 P.2d 661 (1987). Purchase involved the alleged overservice of a 19-year-old who, some time after leaving a restaurant where she and her friends had been drinking, struck a motorcyclist with her car. Id. at 222, 737 P.2d 661. Meyer's BAC was measured at. 13 some three and one-half to four hours after she had left the restaurant. Id. The court held:
Insofar as a cause of action for furnishing intoxicating liquor to an "obviously intoxicated" person is concerned, the results of a blood alcohol test ... and an expert's opinion based thereon, and the physical appearance of that person at a substantial time after the intoxicating liquor was served, are not by themselves sufficient to get such a cause of action past a motion for summary judgment. Whether a person is "obviously intoxicated" or not is to be judged by that person's appearance at the time the intoxicating liquor is furnished to the person.
Id. at 223, 737 P.2d 661. Because a heavy drinker may not appear intoxicated despite a high BAC and because alcohol may react on the human body differently because of "medically recognized variables," the court restated the rule that sobriety must be judged at the time of service. Id. at 225-26, 737 P.2d 661. As direct, observational evidence was lacking in the record, the court concluded that the restaurant's motion for summary judgment should have been granted. Id. at 227-28, 737 P.2d 661.
¶ 14 This court reiterated the proposition that the appearance of intoxication must be judged at the time of service in Christen v. Lee, 113 Wash.2d 479, 780 P.2d 1307 (1989). In Christen, the court reviewed summary judgment for the defendants when the only evidence on the record was from a waitress who deduced that the tortfeasor must have appeared under the influence based on the amount of alcohol he was served. Id. at 489-90, 780 P.2d 1307. The court agreed that this evidence was insufficient to defeat a motion for summary judgment because no evidence existed on the record as to the tortfeasor's actual appearance. Id.
¶ 15 The Purchase and Christen courts distinguished an earlier case, Dickinson v. Edwards, 105 Wash.2d 457, 716 P.2d 814 (1986), because postservice observations of the driver's apparent intoxication in Dickinson occurred within a short time of leaving a drinking establishment. Purchase, 108 Wash.2d at 227-28, 737 P.2d 661; Christen, 113 Wash.2d at 490-91, 780 P.2d 1307. In Dickinson, a drunk driver traveling the wrong way on a freeway off ramp collided with a motorcyclist and injured its driver. 105 Wash.2d at 459, 716 P.2d 814. The driver admitted to drinking consistently at a banquet he had left just five minutes before the accident occurred. Id. at 460, 716 P.2d *1214 814. The responding officer noted that the driver "was unsteady on his feet, had bloodshot eyes and a flushed face, and smelled of alcohol." Id. This court reversed, holding that the officer's testimony, in addition to the driver's admissions constituted sufficient evidence to defeat a defense motion for summary judgment. Id. at 464-65, 716 P.2d 814. Because the officer's testimony reflected the driver's appearance so soon after leaving the banquet, the court reasoned that the testimony could provide the basis for a reasonable inference about the driver's appearance when he was served. Id. at 464, 716 P.2d 814.
¶ 16 Similarly, this court's per curiam opinion in Fairbanks v. J.B. McLoughlin Co., 131 Wash.2d 96, 929 P.2d 433 (1997), reflects that observational evidence by a police officer and the victim of a collision obtained shortly after the alleged overservice can give rise to a material question of fact. Id. at 103, 929 P.2d 433. Thus, Fairbanks and Dickinson allow juries to draw inferences from firsthand observations of a person's intoxication and to make any related credibility determinations.
¶ 17 Faust and her amici contend that the plaintiffs' evidentiary burden in negligent overservice cases necessarily must be lower in light of Barrett. Washington State Association for Justice Foundation argues that "[s]ubstantial evidence can only be evaluated under CR 50 through the prism of the substantive legal standard that must be met." Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 19-20. However, our case law already contemplates that because the standard of liability revolves around appearance, any direct or circumstantial evidence must address actual rather than assumed appearance. Under this rule, jurors are not permitted to make an inferential leap of the "driver's BAC was X, so he must have appeared drunk" type. We reject this construction for the reasons outlined in Purchase. The underlying physiological science reflecting that not all drinkers will appear drunk at certain levels of alcohol consumption does not seem to have changed and no argument before this court challenges that science.[3]
¶ 18 We see no reason to doubt the underlying logic and reasoning contained within the Purchase decision, and we do not move away from its established rule. Thus, we evaluate the evidence presented below under our existing standards to determine whether judgment as a matter of law was appropriate.

C. The Court of Appeals Erred when it Balanced and Weighed the Evidence on Appeal

¶ 19 Our precedent is clear that jurors are allowed to consider and weigh circumstantial evidence of the appearance of intoxication when the witness's observation occurred within a short period of time after the alleged overservice. Dickinson, 105 Wash.2d at 464-66, 716 P.2d 814; Fairbanks, 131 Wash.2d at 103, 929 P.2d 433. Here, the record contains such evidence. That Chapman could recognize that Kinkaid was drunk at the time he left the bar leaves open the possibility that the jury could infer that she could tell he was drunk when she last served him. It was error to take this question away from the jury on appeal.
¶ 20 The facts on the record, when viewed in the light most favorable to Faust, could lead to permissible inferences that Kinkaid was apparently under the influence when he was last served. Primarily, the jury would be entitled to weigh Chapman's corroborated admission that Kinkaid was too drunk to be driving when he left the lodge. Corroborated admissions of a party may constitute substantial evidence of any fact in issue even if the admissions are later denied. See Smith v. Leber, 34 Wash.2d 611, 622, 209 P.2d 297 (1949). Chapman's admissions appeared before the jury by way of Rainy Kinkaid's testimony as well as that of Lisa Johnston. The results of Kinkaid's BAC test along with the findings derived from his autopsy corroborate that Kinkaid was drunk well beyond the legal limit at the time of the *1215 accident. Also, Chapman's observations occurred within a window of time that satisfies this court's holdings in Fairbanks and Dickinson.
¶ 21 As amicus Washington State Association for Justice Foundation points out, this court has not addressed whether BAC can be considered as corroborative evidence of apparent intoxication (nor obvious intoxication under the older, common law standard). RCW 46.61.506(1) provides that BAC is admissible in both criminal and civil cases. While this court has rejected BAC as evidence sufficient by itself to establish a triable issue of fact regarding apparent intoxication, Purchase, 108 Wash.2d at 223, 737 P.2d 661; Christen, 113 Wash.2d at 487, 780 P.2d 1307; see Estate of Kelly v. Falin, 127 Wash.2d 31, 37-38, 896 P.2d 1245 (1995), BAC evidence is relevant as corroborative and supportive of the credibility of firsthand observations, Cox v. Keg Restaurants U.S., Inc., 86 Wash.App. 239, 248-50, 935 P.2d 1377, review denied, 133 Wash.2d 1012, 946 P.2d 402 (1997).
¶ 22 Moreover, the timing of the accident, when viewed in the light most favorable to the nonmoving party, leads to a triable issue of fact for the jury, as the trial court recognized. The collision occurred at 7:45 p.m. Ex. 10. Faust put forward evidence at trial that Kinkaid left the lodge at approximately 7:30 p.m. 3 VRP at 364; 5 VRP at 669-70; 6 VRP at 908. The defendants put forward evidence that Kinkaid left the lodge earlier and visited a bowling alley in the intervening time period. See 11 VRP at 1663-65. Faust's attorney challenged the credibility of the witness on cross-examination. Id. at 1677-79. Credibility determinations lie with the jury, and it was entitled to weigh these conflicting statements about timing and Kinkaid's whereabouts on the day of the collision.
¶ 23 Finally, observations by other lodge patrons may support a factual finding that Kinkaid was not apparently under the influence when he was last served, but because those observations were challenged by other observational evidence, as well as impeached as self-interested testimony, the jury was entitled to weigh this evidence against all else presented at trial. Lodge members did testify to Kinkaid's appearance, but Faust alleged a "conspiracy of silence" due to the ties of membership in the fraternal organization and impeached their testimony on the grounds of faulty memory and inconsistent statements. The Court of Appeals improperly weighed one side of this evidence against the other when it reversed the trial court's denial of the defense motion for judgment as a matter of law.

D. The Trial Court Did Not Abuse Its Discretion in Admitting Beers' Declaration for Impeachment Purposes

¶ 24 Respondents argue that the trial court abused its discretion by admitting Beers' declaration for impeachment purposes. CR 32(a)(3)(B) states that "[t]he deposition of a witness ... may be used by any party for any purpose if the court finds ... that the witness resides out of the county and more than 20 miles from the place of trial." See Bertsch v. Brewer, 97 Wash.2d 83, 89, 640 P.2d 711 (1982). "The credibility of a witness may be attacked by any party, including the party calling the witness." ER 607. Normally, a party can therefore impeach its own witness's deposition testimony at trial if the witness's deposition is used in place of live testimony. There is no doubt here that Beers no longer lived in Whatcom County at the time of trial, so reading the deposition transcript, where the opposing party had the opportunity to cross-examine Beers, was appropriate.
¶ 25 Respondents argue that State v. Hancock, 109 Wash.2d 760, 748 P.2d 611 (1988), bars the use of the declaration for impeachment because they claim Faust's attorney called Beers for the primary purpose of impeaching him with otherwise inadmissible testimony. This authority is not relevant, as it has been applied only when the State seeks to offer otherwise inadmissible evidence in a criminal case. See id. at 763, 748 P.2d 611; State v. Lavaris, 106 Wash. 2d 340, 344-45, 721 P.2d 515 (1986). Furthermore, it is not clear that the declaration is inadmissible testimony, as Beers testified at the deposition hearing subject to cross-examination concerning the declaration, and the declaration *1216 was inconsistent with Beers' deposition testimony and given under oath subject to penalty of perjury. ER 801(d)(1)(i); 6 VRP at 906-08; Clerk's Papers (CP) at 959-71.
¶ 26 Finally, the court made it explicitly clear that the declaration was to be used only as impeachment evidence. The trial court stated:
Part of the deposition testimony concerns a written statement given by the witness to the Plaintiffs' investigator which was attached to the deposition. This instruction concerns that written statement. If you give any consideration to the written statement, you may only consider it in deciding what weight and credibility to give to Mr. Beers' deposition testimony, and for no other purpose.
6 VRP at 905-06.
¶ 27 Given the general rule allowing impeachment of any witnesses and the limiting instruction, the trial court did not abuse its discretion.

E. The Trial Court Did Not Abuse Its Discretion in Finding Pope Was Competent to Testify and Allowing Testimony About Alcohol Use

¶ 28 Respondents next argue that the trial court abused its discretion by allowing Faust's attorney to question respondents' witness Pope in the jury's presence about drinking prior to testifying. Br. of Bellingham Lodge at 32. They further argue that since the trial court was aware that Pope smelled of alcohol prior to his testifying, that an immediate in-chambers hearing as to Pope's competency should have been triggered. Id. at 33.
¶ 29 RCW 5.60.050(1) provides that those who are intoxicated at the time of their production for examination are not competent to testify. This statute does not mandate that a court provide a competency hearing because a witness smells of alcohol. Respondents cite State v. Watkins, 71 Wash.App. 164, 857 P.2d 300 (1993), as authority that the court had a sua sponte duty to determine whether Pope was competent to testify. Watkins does not stand for the proposition, however. In Watkins, the court held that where the record showed that the witnesses were capable of recalling and recounting the events in question, no sua sponte duty existed to inquire into whether the witnesses were of unsound mind. Id. at 171, 857 P.2d 300.
¶ 30 Instead, "[competency is a matter to be determined by the trial court within the framework of RCW 5.60.050." State v. Froehlich, 96 Wash.2d 301, 304, 635 P.2d 127 (1981). "That conclusion will not be disturbed on appeal except for abuse of discretion." Id. Pope testified extensively and cogently about his personal history, his affiliation with the lodge, his acquaintanceship with Kinkaid, and the events of April 21, 2000. 9 VRP at 1234-63. Other than the smell of alcohol on his breath, there is nothing in the record to suggest that Pope was intoxicated. Washington statutes banning driving under the influence of an intoxicating liquor, for example, require either a .08 blood alcohol concentration or that a person be under the influence of or affected by the intoxicant. RCW 46.61.504(1)(a), (b). There is no indication here that Pope was under the influence of or affected by alcohol; the record merely suggests that he smelled of it. 9 VRP at 1262. The trial court was therefore well within its discretion to determine that Pope was a competent witness.
¶ 31 Nor did the trial court abuse its discretion in allowing Faust's attorney to cross-examine Pope about his drinking and discuss the odor of alcohol in closing. Id.; 12 VRP at 1884-85. "`It is well settled in Washington that evidence of drug [and alcohol] use is admissible to impeach the credibility of a witness if there is a showing that the witness was using or was influenced by the drugs at the time of the occurrence which is the subject of the testimony.'" State v. Thomas, 150 Wash.2d 821, 863, 83 P.3d 970 (2004)(quoting State v. Russell, 125 Wash.2d 24, 83, 882 P.2d 747 (1994)). Pope drank one beer at the Cedars Lounge and two beers at Mont Baker Lanes on the night in question. 9 VRP at 1238-41. The smell of alcohol on Pope's breath on the day of trial, while not indicative of intoxication, is certainly evidence of alcohol or drug use, and is thus relevant for impeachment. The trial court *1217 did not abuse its discretion in allowing the testimony.

F. The Trial Court Did Not Abuse Its Discretion by Admitting Testimony About the Lodge

¶ 32 Respondents argue that the trial court abused its discretion by allowing Faust's attorney to offer inadmissible evidence unfairly impugning the lodge's integrity and credibility. This argument fails.
¶ 33 "Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and... a timely objection or motion to strike is made." ER 103(a)(1). While exceptions exist, including for manifest errors implicating a constitutional right, RAP 2.5(a)(3), no such error exists here. Respondents failed to object to the examination of Leibrant when Leibrant was asked about the fraternal bond at the lodge, its oath, its attire, and sacred nature. They also failed to object when Faust's attorney discussed the fraternal bond of the organization in closing argument. There is no indication of any kind of racial, religious, or ethnic animus here, so we find no indication that any constitutional right is implicated. The respondents' failure to object therefore bars consideration of these claims, regardless of whether the evidence unfairly impugned the lodge.
¶ 34 Respondents also argue that the trial court abused its discretion in admitting testimony that the lodge turned over a membership list only pursuant to a court order. "Decisions involving evidentiary issues lie largely within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion." State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1977). This evidence is relevant as it tends to establish that the members of the lodge were working together to protect each other. ER 401. A trial court could reasonably find that this evidence is probative of the lodge members' willingness to work together and is not unduly prejudicial or misleading. ER 403. In its order on defendants' posttrial motions, the trial court stated, "In light of the nature of the testimony given by various lodge members which the jury could clearly have believed indicated an unwillingness to reveal facts detrimental to the lodge's position, the single inquiry as to this fact is minor and merely cumulative to the other testimony." CP at 842. We agree with the trial court and find that it did not abuse its discretion.

CONCLUSION
¶ 35 We hold that evidence sufficient to submit the issue of negligent overservice to a jury may be either direct or circumstantial and that evidence of BAC and autopsy reports can corroborate evidence of postservice appearance and support an inference that a defendant appeared under the influence at the time he was served. Because the jury was entitled to hear and weigh the credibility of evidence pertaining to Kinkaid's appearance at the lodge, the Court of Appeals erred in vacating the verdict. We also hold that the trial court did not abuse its discretion on any of the evidentiary issues. We reverse the Court of Appeals and reinstate the jury verdict.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice MARY E. FAIRHURST, Justice BARBARA A. MADSEN, Justice JAMES M. JOHNSON, Justice RICHARD B. SANDERS, Justice TOM CHAMBERS and PHILIP J. THOMPSON, J. Pro Tem.
NOTES
[1] See, e.g., Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 762, 458 P.2d 897 (1969); Wilson v. Steinbach, 98 Wash.2d 434, 437-38, 656 P.2d 1030 (1982); Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 641, 618 P.2d 96 (1980).
[2] The analysis under CR 50 is substantially identical to that under CR 56. See 4 KARL B. TEGLAND, WASHINGTON PRACTICE: Rules Practice 199, 371-72 (5th ed. 2006).
[3] Amicus curiae Mothers Against Drunk Driving challenges the evidentiary burden on policy grounds: that lowering the burden would increase civil liability and better address the goal of reducing drunk driving fatalities and injuries. Its argument is better placed before the legislature.