[No. 7783. Decided April 7, 1909.]

JOHN K. FISCHER, *Appellant,* v. COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Respondent.*[1]

CARRIERS—OF PASSENGERS—PERSONS RIDING ON ENGINE—AUTHOR-ITY OF ENGINEER—CONTRIBUTORY NEGLIGENCE. Where a freight train is in charge of a conductor, and has in it a caboose for the carriage of passengers, one who rides upon the engine at the invitation of the engineer and without the knowledge of the conductor is guilty of contributory negligence and is not a passenger, although he rode there for fear he would not have time to board the caboose before the train started; as it is not within the scope of the engineer's authority to consent to carry passengers on the engine, and a man of mature years must take notice of that fact and of the impropriety of riding there.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 23, 1908, in favor of the defendant, after a trial on the merits before a jury, dismissing at the close of plaintiff's case an action for personal injuries sustained by a passenger riding on a freight engine. Affirmed.

*Elias A. Wright* and *F. C. Kapp,* for appellant.

*Farrell, Kane & Stratton,* for respondent.

GOSE, J.—The plaintiff brought this action to recover damages for personal injuries. There was a judgment for the defendant, from which the plaintiff has appealed. The complaint states that, on the 19th day of August, 1907, the respondent, a railway corporation, was a common carrier of freight and passengers for hire; that on such day it ac-

[1]Reported in 100 Pac. 1005.

cepted the appellant as a passenger, and agreed to carry him from Taylor Station to a station called "Camp No. 3;" that while carrying him, the respondent carelessly and negligently permitted the train on which the appellant was riding to get beyond control and run away; that as a result of such negligence the train left the track, was wrecked, and the appellant was permanently injured. The answer admitted that the respondent was a railway corporation, and that it operated its line of road between the stations mentioned; but denied each of the other averments in the complaint. The respondent pleaded affirmatively, that the appellant's injury was due to his own negligence; that he assumed the risk; and that he was a trespasser upon the property of the respondent at the time he received his injury. The reply joined issue upon each of these affirmative averments. At the conclusion of the appellant's testimony, upon the motion of the respondent, the court entered a judgment dismissing the cause.

We gather from the evidence the following facts: At the time the appellant received the injury for which he seeks to recover judgment, the respondent was a railway corporation carrying freight and passengers for hire; that prior to June, 1907, it had operated one train daily between Taylor Station and Camp No. 3, upon which it had carried both freight and passengers; that at about this time, it established a daily passenger train between these points and also operated a daily freight train between the same points; that the freight train had no schedule time; that it would leave Taylor Station daily, going north, between two and four o'clock in the afternoon; that Camp No. 3 is about four miles northerly from Taylor Station; that there was no depot, waiting room, or platform at Taylor Station; that the appellant at the time of the injury was foreman of construction for Denny-Renton Clay & Coal Company; that on the day of the injury he was taking a car and a crew of men to Camp No. 3, for the purpose of having the car loaded and returned to

Taylor Station; that there was a caboose on the freight train between such points on said day; that between two and four o'clock he directed his men to get aboard the train; that he inquired of the conductor how soon he would leave the station, and was informed that the train would start in about ten minutes; that he went some distance from the train to attend to some business for his employer, returning in about five minutes; that the train was then ready to start; that he feared that, owing to the length of the train and the unevenness of the ground, he would not be able to reach the caboose in time to take passage; that the engineer told him to get on the engine, and he did so; that the crew, owing to defective brakes, lost control of the train; that when it was near Camp No. 3, where the switch had been left open by the respondent, the train was running at a high rate of speed; that the fireman jumped and told him to jump; that the engineer told him to jump, and he did so, and received the injury complained of. There is no evidence that the conductor knew that he was riding upon the engine, nor is there any evidence tending to show that any one in the caboose was injured. There is evidence that people were in the habit of riding on the freight train which, as we have said, carried a caboose. The appellant testified that, "I do not remember of seeing anybody ride on the engine."

The appellant urges two propositions: (1) That it is not negligence *per se* to ride on a freight train which is in the habit of carrying passengers; (2) that the fact that he was riding on the engine does not preclude a recovery. The decisions of this and other courts as to whether it is negligence *per se* to board or alight from a moving train at the instance of the conductor, we do not regard as applicable to the facts in the case at bar; nor do we regard as applicable the cases touching the status of a person riding on the platform of a car, or riding on a freight train which customarily carries passengers. In support of the second proposition, the appellant has cited three cases where the injury re-

sulted to a party who was riding on an engine, in which the
question of negligence was submitted to the jury: *Philadel-
phia etc. R. Co. v. Derby*, 14 How. 468, 14 L. Ed. 502;
*Waterbury v. New York etc. R. Co.*, 17 Fed. 671; *Lake
Shore etc. R. Co. v. Brown*, 123 Ill. 162, 14 N. E. 197, 5 Am.
St. 510.

In *Philadelphia v. Derby, supra*, the plaintiff, a president
of one railroad company, was riding upon an engine upon
the invitation of the president of the defendant's road, at
the time of the injury.    In *Waterbury v. New York etc. R.
Co., supra*, the plaintiff, a stock drover, was riding upon
the engine when he received the injury.    It appeared that
on various prior occasions  he and other drovers had been
permitted by employees of the defendant to accompany the
cattle by the same train, sometimes on the cars of the cattle
train, at other times on the engine.    The drovers were re-
quired to look after their own cattle.    At times the trains
were delayed and the cattle required attention, and the rail-
road company did not look after them at such time.    The
grounds upon which the court submitted the case to the jury
are well stated in the following language:

"Upon the occasion in question the plaintiff and another
drover got upon the engine, there being none but box cars
on the train.    The engineer inquired if they had cattle on
the train, and being informed that such was the fact, made
no objection to their riding upon the engine.  .  .  .  It
should have been left to the jury to determine as a question
of fact whether the defendant had by its conduct held out
its employees to the plaintiff as authorized under the circum-
stances to consent to his being carried on the train with his
cattle."

But the court states the general rule as follows:

"Undoubtedly the presumption of law is that persons rid-
ing upon a train of a railroad carrier, which are palpably not
designed for the transportation of persons, are not lawfully
there.    And if they are permitted to be there by the consent
of the carrier's employees, the presumption is against the

authority of the employees to bind the carriers by such consent."

In *Lake Shore etc. R. Co. v. Brown, supra,* the deceased was, and for several years had been, a shipper of stock to the Union Stock Yards, Chicago. The defendant's yards were about three-fourths of a mile from the stock yards, and its habit was to attach cars containing stock to a switch engine and then convey them from the company's yards to the stock yards. On the day of the injury, the caboose in which the deceased had been riding was detached from the train, and the switch engine attached thereto. The engineer told the deceased to get on the engine. He did so, and was killed. It was the duty of the company to carry the deceased and his stock to the stock yards, and no other mode of transportation was provided for the deceased. In *Pool v. Chicago etc. R. Co.,* 53 Wis. 657, 11 N. W. 15, an authority also relied upon by the appellant, the plaintiff, a detective, was injured while being carried on a handcar by the defendant, and at its request, to engage in its service. At page 659, it is said:

"That, upon his going to the depot at Portage City the means of conveyance provided by the company, or its agents, was a hand-car upon which he was directed to ride. This shows that this mode of transit was authorized by the company, and the company was certainly under obligation to use reasonable care to insure his safe carriage in that manner."

In the instant case the appellant had the option of two modes of riding; (1) upon the passenger train which left Taylor Station daily going north, passing Camp No. 3, and leaving Taylor Station about noon; (2) the caboose on the freight train. The appellant, as we have stated, was foreman of a construction company. He was forty-one years of age, receiving a salary of $140 per month. We must, therefore, assume that he was a man of at least ordinary intelligence. The structure and use of an engine are such as to

give notice to all persons of ordinary intelligence that it is not designed for the carrying of passengers. The conductor is the agent of the common carrier, who has charge of the train and the passengers. The engine is designed and used for the accommodation of the engineer and the fireman in the discharge of their duties. Common carriers of passengers are held to the exercise of the highest degree of care. This is necessary for the protection of human life. This being true, public policy forbids that they should be hampered in the performance of this duty by carrying passengers on the engine or tender. The engine is a place of danger, and every person of ordinary intelligence will be required to take notice of this fact. The train upon which the appellant desired to be carried had a caboose. If he wanted to become a passenger it was his duty to get aboard the train before it started, and take a place designed or used for the accommodation of passengers. He approached the conductor and said to him that he wanted to go to Camp No. 3, and asked him when he would start. He testified, that the train had no regular hour for leaving Taylor Station; that it left between two and four o'clock each afternoon. He knew when the conductor told him that it would start in about ten minutes that it was only an estimate of time. It was his duty to get on the train, and not to undertake to delay it by matters of no concern to respondent. If the train left him without fault upon his part he had his action for damages.

In *Chicago etc. R. Co. v. Michie*, 83 Ill. 427, speaking on this subject, it is said:

"The permission of the engine driver, if given, was not the permission of the company, as he had no power to give it. Had the conductor of the train given the permission, or, knowing the deceased was upon the engine, suffered him there to remain, it might be considered the act of the company, as the conductor has control of the entire train, and his act is rightfully regarded as the act of the company, and the authorities cited by the appellee on this point might be applicable. The driver of the engine occupies a different

and very subordinate position. He has no right to say who shall be upon the train, or take cognizance of such as may be upon it. He is to look to his engine, and keep it in order, and permit no one to ride upon it without the permission of his superior."

In *Atchison etc. R. Co. v. Johnson*, 3 Okl. 41, 41 Pac. 641, the plaintiff had paid a brakeman the sum of one dollar for the privilege of riding in a box car from the village of Purcell to the town of Guthrie, and while so riding he was injured. At pages 645-6, it is said:

"There are certain facts in railroad passenger and freight traffic of which the public is required to take notice. One is that a passenger train is for the purpose of carrying passengers. Another is that a freight train is for the purpose of carrying freight. One proposing to be carried as a passenger upon a freight train must advise himself upon what terms the company will contract to carry him as a passenger, and with whom he may make the contract. The courts will require that the traveling public shall take notice that freight cars are not intended for the carriage of passengers; that, when passengers are accepted upon freight trains, the caboose attached to the train is the car in which passengers must place themselves, unless otherwise directed by a person having charge of the train; that the railroad company places a conductor in charge of each train, who has charge of its management in all respects, and with whom persons proposing to be carried as passengers must contract, and under whose direction they must act, subject to the rules of the company; that, in order to the manipulation of the mechanical movement of the train, it is necessary that the railroad company should employ an engineer, whose duty is to manage the engine, a fireman, whose duty it is to attend to the fires, and a brakeman, whose employment and duty it is to attend to the brakes upon the train. A person proposing to become a passenger must deal with the conductor who has charge of the train, and not with the subordinate employees of the train. It is not within the scope or authority of the engineer, fireman, or brakeman to collect fare or bind the company, and *the defendant in error had no right to suppose that the brakeman, Harry Hill, could bind the company by agreement by*

which the defendant in error undertook to make the payment which he did. Upon his having undertaken to procure transportation upon the freight train of the plaintiff in error as a passenger, it was the duty of the defendant in error to have informed himself of the rules and regulations of freight trains, intended primarily for the carriage of freight, and to have informed himself by applying to the conductor who had charge of the train, and so ascertain upon what conditions he would be accepted and permitted to ride upon the train as a passenger. He failed to do this, and failed to become a passenger entitled to that high degree of care which railroad companies are held to owe to those who are accepted as, and whom it agrees to carry as, passengers. The defendant in error, in undertaking to negotiate with the brakeman, failed to put himself in charge of the carrier so as to raise the relation of carrier and passenger. . . . We shall accordingly hold that the defendant in error was, by the act of going into the box car on the freight train of the defendant, at the invitation of the brakeman, and without the knowledge of the conductor, guilty of such contributory negligence as would preclude his recovery in this case, . . ."

In *Flower v. Pennsylvania R. Co.*, 69 Pa. St. 210, 8 Am. Rep. 251, the fireman asked a boy ten years of age to put in the hose on the tender and turn on the water. The boy, in compliance with this request, climbed up the side of the tender and, as he did so, some detached cars struck the car behind it. The boy was killed. The court, in holding the company exempt from liability, said:

"This seems to be equally plain, without resorting to evidence given, that engineers are not permitted to receive any one on the engine, but the conductor and the foreman or superintendent; that it is the duty of the fireman to supply the engine with water; that he has no power to invite others to do it, and can leave his post only on a necessity. The business of an engineer requires skill and constant attention and watchfulness, and that of a fireman requires some skill and much attention. They are in charge of a machine of vast power and much capacity for mischief. . . . It may excite our sympathy, but cannot create rights or duties which have no other foundation."

In *Snyder v. Hannibal etc. R. Co.*, 60 Mo. 413, servants of the company had been in the habit of permitting the injured boy and other boys to jump on the train and ride between certain points in the city. The boy was injured in attempting to get on the train. The court said:

"The mere fact that a tortious act is committed by a servant while he is. engaged in the performance of the service he has been employed to render cannot make the master liable. Something more is required. It must not only be done while so employed, but it must appertain to the particular duties of that employment."

In *Duff v. Alleghany R. Co.*, 91 Pa. St. 458, 36 Am. Rep. 675, the conductor had permitted the injured boy to ride on the train from day to day, not as a passenger or an employee, but for the purpose of selling newspapers. The court said:

"This is a case of mere trespasser, and the company owed him no duty."

In *Atchison etc. R. Co. v. Lindley*, 42 Kan. 714, 22 Pac. 703, 16 Am. St. 515, 6 L. R. A. 646, a stock drover, at the request of the conductor, got on top of a freight car to give signals, and was injured. The court, in holding that the company had incurred no liability, said:

"He occupied merely the position of a passenger who voluntarily assumed a very dangerous position."

"The plaintiff did not become a passenger or obtain any of a passenger's rights by paying over his money at the demand of the brakeman, for it is not within the scope of authority, apparent or real of the latter, to collect fare. . . . From the undisputed evidence it is clear that the only duty owing to the plaintiff by defendant company was to refrain from wantonly inflicting an injury upon him." *McNamara v. Great Northern R. Co.*, 61 Minn. 296, 63 N. W. 726-7.

In the last case cited, the injured party had paid a brakeman a sum of money for the privilege of riding in a box-car.

"But there are certain portions of every railroad train which are so obviously dangerous for a passenger to occupy and so plainly not designed for his reception that his presence there will constitute negligence as a matter of law, and preclude him from claiming damages for injuries received while in such position.  A passenger who voluntarily and unnecessarily rides upon the engine or the tender or upon the ·pilot or bumper of the locomotive or upon the top of the car or upon the platform, cannot be said to be in the exercise of that caution and discretion which the law requires of all persons who are of full age, of sound mind, and of ordinary intelligence." *Little Rock etc. R. Co. v. Miles* (Ark.), 13 Am. & Eng. R. R. Cases (Old Series) pp. 10, 23-4.

In *Railroad Co. v. Jones*, 95 U. S. 439, 24 L. Ed. 506, the court, at pages 442-3, say:

"The plaintiff had been warned against riding on the pilot, and forbidden to do so.  It was next to the cowcatcher, and obviously a place of peril, especially in case of collision. There was room for him in the box car. He should have taken his place there.  He could have gone into the box car in as little if not in less time than it took him to climb to the pilot. The knowledge, assent, or direction of the company's agent as to what he did is immaterial.  If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk.  As well might he have obeyed the suggestion to ride on the cowcatcher, or put himself on the track before the advancing wheels of the locomotive."

We conclude, therefore, that the engineer, in inviting the appellant to get onto the engine, did not act within the real or apparent scope of his authority, that the appellant was required to take notice of this fact, that the appellant was not a passenger, that the company owed him no affirmative duty, and that he cannot recover.  The judgment will, therefore, be affirmed.

Mount, Crow, Dunbar, Chadwick, and Fullerton, JJ., concur.

Parker and Morris, JJ., took no part.