246 P.3d 182 (2011)
Rizwana RAHMAN, Respondent,
v.
STATE of Washington, Petitioner.
No. 83428-8.
Supreme Court of Washington, En Banc.
Argued May 18, 2010.
Decided January 20, 2011.
*183 John Coulter Dittman, Office of the Attorney General, Olympia, WA, Pamela H. Anderson, Tacoma Public School District # 10, Tacoma, WA, for Petitioner.
State of Washington (Appearing Pro Se), Office of the Attorney General, Tumwater, WA.
Karen Marie Kay, Law Office of Harold Carr, PS, Lacey, WA, for Respondent.
Stewart Andrew Estes, Keating, Bucklin & McCormack, Melissa O'Loughlin White, Kevin Anthony Michael, Cozen O'Connor, Seattle, WA, amicus counsel for Washington Defense Trial Lawyers.
Bryan Patrick Harnetiauxm, Attorney at Law, Spokane, WA, George M. Ahrend, Ahrend Law Firm PLLC, Moses Lake, WA, amicus counsel for Washington State Association for Justice.
STEPHENS, J.
¶ 1 In this case, we must decide if the State is liable under the doctrine of respondeat superior for injuries to an unauthorized passenger in a state vehicle. Rizwana Rahman was injured in an automobile accident while riding with her husband, Mohammad Shahidur Rahman, from Olympia to Spokane on state business. The trial court dismissed her suit against the State on the ground that *184 Mohammad[1] was not authorized to allow his wife to ride with him in a state car and was thus acting outside the scope of his employment at the time of the accident. The Court of Appeals reversed, holding that as a matter of law the State is vicariously liable for Mohammad's negligence. We affirm the Court of Appeals.

FACTS
¶ 2 Mohammad was employed as an intern with the Washington State Department of Ecology during the summer of 2005. He worked in the dam safety office where, among other duties, he accompanied senior engineers on inspections and helped to write reports. On July 26, 2005, Mohammad drove from Olympia to Spokane in a state-owned vehicle to meet a department hydrologist with whom he would inspect a construction site; unbeknownst to his employer, he brought his wife, Rizwana, along. At the time, department policy 11-10 provided: "Ecology vehicles are not to be used for personal trips unrelated to the state business for which they were assigned, nor to transport passengers that are not on official state business." Clerk's Papers at 155.
¶ 3 While driving near Tiger Mountain Summit on State Route 18, Mohammad failed to negotiate a curve. The car left the roadway, struck a tree and rolled several times. Rizwana was badly injured. She brought this action for negligence against both Mohammad and the State. The complaint was later amended to name the State as the sole defendant.
¶ 4 Rizwana moved for partial summary judgment, seeking an order determining that the State was vicariously liable under the doctrine of respondeat superior for her husband's negligence in causing the accident. The State filed a crossmotion for summary judgment, seeking dismissal on the ground that its employee's use of a state vehicle to transport an unauthorized passenger fell outside the scope of his employment.
¶ 5 The trial court granted the State's motion and denied Rizwana's motion. Observing that no Washington case was directly on point, the court relied in part on the Restatement (Second) of Agency § 242 (1958) to conclude that vicarious liability did not apply in situations involving unauthorized passengers. The Court of Appeals reversed and ordered entry of a partial summary judgment in Rizwana's favor. Writing for a unanimous panel of the court, Judge C.C. Bridgewater concluded, "Because Mohammad was clearly engaged in his employer's business when his negligence caused injury to Rizwana, Mohammad's employer, the Department, is vicariously liable under the doctrine of respondeat superior as a matter of law." Rahman v. State, 150 Wash.App. 345, 359, 208 P.3d 566 (2009).
¶ 6 The State petitioned this court for review, which we granted. Rahman v. State, 167 Wash.2d 1009, 220 P.3d 207 (2009).

ANALYSIS
¶ 7 The doctrine of respondeat superiorliterally, "let the master answer"holds that an employer is liable for the negligent acts of its employees that are "`within the scope or course of employment.'" Dickinson v. Edwards, 105 Wash.2d 457, 466, 716 P.2d 814 (1986) (quoting Nelson v. Broderick & Bascom Rope Co., 53 Wash.2d 239, 241, 332 P.2d 460 (1958)). The test for determining when an employee acts within the scope of employment is well settled:
whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.

Greene v. St. Paul-Mercury Indem. Co., 51 Wash.2d 569, 573, 320 P.2d 311 (1958) (citing Lunz v. Dep't of Labor & Indus., 50 Wash.2d 273, 310 P.2d 880 (1957); Roletto v. Dep't Stores Garage Co., 30 Wash.2d 439, 191 P.2d 875 (1948)). This generally presents a jury question, but the issue may be resolved on summary judgment when there can be only one reasonable conclusion from the undisputed facts. Breedlove v. Stout, 104 Wash.App. 67, 70 n. 5, 14 P.3d 897 (2001) (citing Strachan *185 v. Kitsap County, 27 Wash.App. 271, 274-75, 616 P.2d 1251, review denied, 94 Wash.2d 1025, 1980 WL 153298 (1980)).
¶ 8 Rizwana argues that Mohammad was acting within the course of his employment at the time of the automobile accident because he was driving from Olympia to Spokane in a state vehicle at his employer's direction. The State counters that Mohammad's unauthorized act of allowing his wife to ride along took his conduct outside the scope of his employment, as it was done for his own purposes and was contrary to department policy. In a sense, both parties are correct. Mohammad was indisputably engaged in the duties his employment required, not having departed on a "frolic or detour," but he was also serving his own interests (and his wife's) by having Rizwana along on the drive. His conduct at the time reflected a mixture of both benefit to his employer and to himself.
¶ 9 This circumstance is nothing new. We observed 60 years ago in McNew v. Puget Sound Pulp & Timber Co., 37 Wash.2d 495, 499, 224 P.2d 627 (1950):
If the work of the employee creates the necessity for travel, he may be in the course of his employment though he is serving at the same time some purpose of his own; but if the work for the employer had no part in creating the necessity for travel, and the journey would have been made though no business was transacted for the employer, or would not have been made if the private purpose was abandoned, the journey may be regarded as personal and there would be no employer liability.
In McNew, the employee, a head cook at a logging camp, drove his own car home for the weekend to visit his family, bought supplies to take back to the camp en route, and on his return trip was involved in an automobile accident. We held that the employee was acting beyond the scope of his employment as a matter of law because he would have made the trip regardless of purchasing the supplies, and the fact that the supplies were in his car was "merely incidental and contributed in no way to the accident." Id. While rejecting vicarious liability on the facts in the case, we observed:
The general trend of authority is in the direction of holding that, where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured, and the employer will be held responsible unless it clearly appears that the employee could not have been directly or indirectly serving his employer; also the fact that the predominant motive of the employee is to benefit himself does not prevent the act from being within the course or scope of employment, and if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability if the act otherwise is within the service.
Id. at 497-98, 224 P.2d 627.
¶ 10 Under this analysis, the Court of Appeals correctly concluded that Mohammad was acting within the scope of his employment at the time of the automobile accident that injured Rizwana. Though he combined his own business with the State's by allowing Rizwana to ride along as a passenger, the trip and the route taken were dictated by official state business, and there is no evidence that Rizwana's presence in any way contributed to the accident.
¶ 11 The State objects that applying the doctrine of respondeat superior in this manner ignores the important fact that Mohammad violated department policy by inviting his wife to ride with him in a state vehicle, leaving the State no meaningful way to limit its liability exposure. See Pet. for Review at 13. This argument deserves careful scrutiny, as we should be sensitive to the increased risk employers may face when employees disregard workplace rules. Nonetheless, both precedent and sound policy weigh in favor of recognizing vicarious liability.
¶ 12 First, as to precedent, we have previously rejected the notion that an employee's violation of a workplace rule renders the employee's conduct outside the scope of employment. Dickinson, 105 Wash.2d at 470, 716 P.2d 814 ("`[A]n act, although forbidden, *186 or done in a forbidden manner, may be within the scope of employment.'" (quoting RESTATEMENT (SECOND) OF AGENCY § 230 (1958))); Smith v. Leber, 34 Wash.2d 611, 623-24, 209 P.2d 297 (1949). In each of these cases, an employee's drunk driving caused an accident for which the employer was held vicariously liable. In Smith, the employee drove after having been specifically told by his supervisor not to drive. This court upheld a verdict finding vicarious liability, noting that "`as a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer.'" Smith, 34 Wash.2d at 623, 209 P.2d 297 (quoting 35 AM. JUR. MASTER AND SERVANT § 559, at 993 (1941)). Similarly, in Foote v. Grant, 55 Wash.2d 797, 350 P.2d 870 (1960), the court found it "irrelevant" to the analysis of vicarious liability that the driver of a car that struck the plaintiffs' car had invited his sister to ride with him contrary to his transport agreement or that the sister may have been driving at the time of the accident. Id. at 799, 350 P.2d 870.
¶ 13 These cases underscore the sound policy supporting respondeat superior. The doctrine rests upon the relationship between an employer and employee, which is characterized by a right of control. The very fact that the employer is in a position to impose workplace rules and standards justifies vicarious liability, even where the employee acts in a forbidden way. See Poundstone v. Whitney, 189 Wash. 494, 500-01, 65 P.2d 1261 (1937). We said in Poundstone:
"If it were true that a servant is outside the scope of his employment whenever he disobeys the orders of his master the doctrine of respondeat superior would have but scant application, for the master could always instruct his servant to use ordinary care under all circumstances. The servant's negligence would therefore always be contrary to orders and the nonliability of the master would follow. But such is not the law. The servant is within the scope of his employment when he is engaged in the master's service and furthering the master's business though the particular act is contrary to instructions."
Id. at 501, 65 P.2d 1261 (quoting Smith v. Yellow Cab Co., 173 Wis. 33, 35, 180 N.W. 125 (1920)). The justification for imposing vicarious liability is even stronger in this case than in Dickinson, Smith, or Poundstone. In each of those cases, the unauthorized conduct of the employees contributed to the automobile accidents, but there is no allegation here that Mohammad's unauthorized act in allowing his wife to ride in the state car was in any way a cause of the accident that injured Rizwana.[2]
¶ 14 Nonetheless, the State argues that Mohammad's specific violation of department policyallowing an unauthorized passenger to ride in a state vehiclepresents a special case. It relies on the principle of Restatement (Second) of Agency § 242, at 534 (1958):
A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment.[[3]]
¶ 15 Recognizing that section 242 has never been adopted by this court, the State contends its substance is reflected in two cases from 1917, Gruber v. Cater Transfer Co., 96 Wash. 544, 165 P. 491 (1917) and McQueen v. People's Store Co., 97 Wash. 387, 166 P. 626 (1917), and an earlier case on which they rely, Fischer v. Columbia & Puget *187 Sound R.R., 52 Wash. 462, 100 P. 1005 (1909).
¶ 16 Gruber and McQueen each involved injuries to an individual who was riding on a transport truck at the invitation of the driver. In Gruber, the plaintiff was allowed to ride in the back of a moving truck and was thrown from or fell out of the truck. 96 Wash. at 545-46, 165 P. 491. In McQueen, the plaintiff and a companion were riding on the running board of a truck when it encountered rough road and the plaintiff was either thrown from or jumped off the truck. 97 Wash. at 388, 166 P. 626. The court in each of these cases followed the analysis of Fischer. Gruber, 96 Wash. at 546, 165 P. 491 (relying on Fischer); McQueen, 97 Wash. at 390, 166 P. 626 (relying on Gruber). In Fischer, the plaintiff was injured while riding on the engine of a freight train. The court held that the railroad's agent had no authority to create a carrier-passenger relationship and that the plaintiff was contributorially negligent or assumed the risk of injury. Fischer, 52 Wash. at 471, 100 P. 1005.
¶ 17 As the Ninth Circuit Court of Appeals has recognized, these cases have in common the fact that the plaintiffs were allowed by an employee to ride on a part of a vehicle not designed to transport passengers. Pierson v. United States, 527 F.2d 459, 463 n. 2 (9th Cir.1975). They do not address the circumstance here where Rizwana rode as a passenger in the state car her husband was authorized to drive. More importantly, Fischer, Gruber, and McQueen must be understood in the context of the common carrier liability theory they addressed and the doctrine of contributory negligence, which at the time these cases were decided, barred recovery by a negligent plaintiff.
¶ 18 In the early part of the 20th century, determining the liability of a carrier for injury to a plaintiff focused on the question of whether the defendant's agent had real or apparent authority to create the necessary carrier-passenger relationship. See Fischer, 52 Wash. at 471, 100 P. 1005 ("We conclude. . . that the engineer, in inviting the appellant to get onto the engine, did not act within the real or apparent scope of his authority, that the appellant was required to take notice of this fact, that the appellant was not a passenger, that the company owed him no affirmative duty, and that he cannot recover."); Gruber, 96 Wash. at 547, 165 P. 491 (following Fischer and concluding that "the presumption is equally strong in this case that appellant's driver did not have authority to invite or permit respondent to ride upon the truck, especially in the position in which he did ride"); McQueen, 97 Wash. at 390, 166 P. 626 (following Gruber, which the court described as holding "that the driver of the truck had no real or apparent authority to allow or permit Gruber to ride upon the truck; or, stated as a legal proposition, that the driver was not acting within the scope of his employment").
¶ 19 The State is correct that these cases reflect a rule similar to Restatement (Second) of Agency § 242, but this rule goes to the question of "apparent authority" in the context of a carrier or owner of land, not to "scope of . . . employment" generally. Pierson, 527 F.2d at 463 n. 2 (recognizing that comments to section 242 clarify "that [section 242] applies to a servant who `without authority or apparent authority to do so, permits or invites persons to ride on [the master's vehicle]'" (quoting RESTATEMENT (SECOND) AGENCY § 242 cmt. a (1958))). Under the Restatement (Second) of Agency, a separate provision, section 228, addresses the question of scope of employment, and this section states the general rule consistent with our case law. RESTATEMENT (SECOND) AGENCY § 228 (1958); see also Dickinson, 105 Wash.2d at 470, 716 P.2d 814; Poundstone, 189 Wash. at 500-01, 65 P.2d 1261. Though the opinion in McQueen describes apparent authority in terms of scope of employment, 97 Wash. at 390, 166 P. 626, it is clear from the discussion in McQueenincluding its reliance on Gruber, which in turn relied on Fischerthat the dispositive question was whether, through the agent's invitation to the plaintiff, a carrier-passenger relationship arose.[4]
*188 ¶ 20 It is only in the context of this question that the additional issue of whether the plaintiff assumed the risk of injury or was contributorially negligent became relevant. See Fischer, 52 Wash. at 471, 100 P. 1005 (recognizing that "`there are certain portions of every railroad train which are . . . so plainly not designed for [the plaintiff's] reception, that his presence there will constitute negligence as a matter of law, and preclude him from claiming damages for injuries received while in such position'" (quoting Little Rock & Fort Smith Ry. Co. v. Miles (Advance Case Ark. 1882), reprinted in 13 AMERICAN AND ENGLISH RAILROAD CASES 10, 23-24 (Lawrence Lewis Jr. ed., 1884))). On the other hand, once it was determined that the defendant's agent was not authorized to grant the plaintiff status as a "passenger," the separate questionwhether the employee was acting within the scope of his employmentbecame irrelevant. See Pierson, 527 F.2d at 462-64 (explaining the difference between apparent authority cases such as Fischer, Gruber, and McQueen, and scope of employment cases such as Smith).
¶ 21 Thus, once we look behind the language and understand the principles at issue in Fischer, Gruber, and McQueen, it becomes clear why these cases are inapplicable to the present case. Instead, the question of vicarious liability here must be resolved by the analysis in McNew, Smith, Poundstone, and Dickinson.[5] Under that analysis, the fact that Mohammad acted against department policy by inviting Rizwana to ride with him in a state car does not defeat vicarious liability. At the time of the accident, Mohammad was driving from Olympia to Spokane on official state business. Though bringing Rizwana along certainly served Mohammad and his wife's interests, Mohammad's conduct at the time was also in the service of the State's business. Based on the undisputed facts, vicarious liability must be recognized as a matter of law.[6]
¶ 22 Finally, the State urges us to consider RCW 42.52.160(1), which prohibits state employees from "us[ing] any . . . property under the . . . employee's official control or direction, or in his or her official custody, for the private benefit or gain of the . . . employee, or another." The Court of Appeals refused to consider this statute because the State raised it in a "Supplemental Certificate of Authority" on the eve of oral argument. Rahman, 150 Wash.App. at 358-59, 208 P.3d 566. Nonetheless, relying on Clawson v. Grays Harbor College District No. 2, 148 Wash.2d 528, 545, 61 P.3d 1130 (2003), the court stated in dicta that the statute was inapplicable because "[t]here is no allegation or evidence that Mohammad wasted state resources." Rahman, 150 Wash.App. at 359 n. 7, 208 P.3d 566.
¶ 23 The failure of the State to timely cite RCW 42.52.160 in the Court of Appeals does not foreclose its consideration, as an appellate court is entitled to consider relevant law in deciding an issue, regardless of *189 whether any party has cited it. Ellis v. City of Seattle, 142 Wash.2d 450, 459 n. 3, 13 P.3d 1065 (2000). On the other hand, this case is on appeal from an order granting summary judgment, and our review is appropriately limited to the evidence and issues called to the attention of the trial court. RAP 9.12. Perhaps for this reason, the State does not ask us to affirm the trial court's summary dismissal by relying on RCW 42.52.160, but instead asks only that we correct the Court of Appeals' erroneous interpretation of the statute. Pet. for Review at 14-16; Suppl. Br. of Pet'r at 20-22.
¶ 24 The Court of Appeals relied on Clawson to frame the question as whether Mohammad "wasted" state resources, but RCW 42.52.160(1) does not speak in terms of "waste"rather, it concerns the "use" of state resources. A plain reading of the statute suggests that it reasonably can be construed to reach Mohammad's conduct in transporting his wife in a state vehicle. Nevertheless, even assuming Mohammad's conduct violated RCW 42.52.160, the statutory violation does not render the doctrine of respondeat superior inapplicable. As noted, an employee may be acting within the scope of employment even when engaged in conduct that violates work rules or standards. Smith, 34 Wash.2d at 623-24, 209 P.2d 297; Dickinson, 105 Wash.2d at 470, 716 P.2d 814; Poundstone, 189 Wash. at 500-01, 65 P.2d 1261. The State, as an employer, is liable for its employees' negligence to the same extent that a private employer would be, so it makes no difference in this context that a statute (in addition to a department policy) provides a workplace rule. See generally RCW 4.92.090. Indeed, to the extent the statute evidences the State's control over its employees' conduct, including the authority to discipline employees who improperly use state resources, this supports rather than undermines the justification for recognizing vicarious liability.

CONCLUSION
¶ 25 The Court of Appeals correctly held that vicarious liability applies to these facts as a matter of law. Accordingly, we affirm the Court of Appeals and remand to the trial court with instructions to enter partial summary judgment in favor of Rizwana Rahman and for further proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, RICHARD B. SANDERS, J.P.T., TOM CHAMBERS, SUSAN OWENS, AND MARY E. FAIRHURST, Justices.
J.M. JOHNSON, J. (dissenting).
¶ 26 The majority holds the State of Washington liable for injury to Mohammad Shahidur Rahman's wife (Rizwana Rahman), even though he was prohibited from taking her in the state vehicle and he negligently drove off the road, causing the injury. Faithful application of this court's precedent, including McNew, Smith, Poundstone, and Dickinson,[1] however, requires the conclusion that Mr. Rahman was outside the scope of state employment. The question under Washington State law should turn on the issue of whether Mr. Rahman was authorized to transport his wife in this state-owned vehicle. Because Mr. Rahman was not so authorized, and indeed was specifically prohibited from doing so, and because the majority's ruling legislates new policy to extravagantly expand state liability, I dissent.

FACTS
¶ 27 Mr. Rahman temporarily worked as an intern with the Washington State Department of Ecology (Department) from June 1, 2005, until August 31, 2005. When he was hired, Mr. Rahman completed a new employee orientation, during which employee policies were reviewed with him, specifically including the use of state-owned vehicles, Policy 11-10. That policy reads, in relevant part, "Ecology vehicles are not to be used for personal trips unrelated to the state business for which they were assigned, nor to transport passengers that are not on official *190 state business." Clerk's Papers at 155 (emphasis added). The secretary specifically remembers reviewing this policy with Mr. Rahman and directing him to the Department intranet site to review all policies. Mr. Rahman and his supervisor also signed a checklist form to show that the policy had been reviewed with him. Nevertheless, Mr. Rahman later claimed that he "had no . . . idea" about the vehicle policy because it "was my very first job in the U S [sic] and unfortunately I did not go through all the documents." Id. at 117.
¶ 28 Mr. Rahman's duties at the Department included accompanying senior engineers on site inspections. In late July, Mr. Rahman was directed to travel to Spokane for one such inspection. He received permission to check out a state-owned vehicle and to drive it home the night before the trip, since he was leaving early the next morning. Mr. Rahman signed another form acknowledging that he was "responsible for reading and being in compliance with all Department of Ecology vehicle-related policies" when he checked out the vehicle. Id. at 77.
¶ 29 The evening before his trip his wife, Rizwana, apparently asked to ride with Mr. Rahman because she was ill and lonely. Mr. Rahman admitted, responding, "Well, I don't know if . . . it's going to be a good idea" because "I wasn't sure if that was . . . a rule or if I was supposed to tell somebody about it." Id. at 166. However, Mr. Rahman eventually consented and took his wife with him in the state vehicle across the state. He did not inform anyone at the Department that he was taking his wife with him nor did he ask for permission. His supervisor later testified that permission to take Mrs. Rahman would not have been granted had Mr. Rahman asked.
¶ 30 The Rahmans left their home in Olympia and headed for Spokane early on July 26, 2005. It was dark and drizzly when they reached the summit of Tiger Mountain on State Route 18. Mr. Rahman lost control of the vehicle, and it veered off the highway, struck a tree, and rolled. Mrs. Rahman was seriously injured during the crash.
¶ 31 The parties agree that Mr. Rahman was driving negligently at the time of the accident and that he violated state policies by allowing Mrs. Rahman to ride with him in the vehicle. Mr. Rahman's supervisor formally reprimanded him for violating the Department's policy against transporting unauthorized passengers in state vehicles. Mrs. Rahman initially filed a personal injury action against both her husband and the State, but later amended her complaint, dropping her husband and naming the State as the sole defendant.

ANALYSIS
¶ 32 The majority asserts that the question of vicarious liability in this unfortunate case must be resolved by the analysis applied in McNew, Smith, Poundstone, and Dickinson. Majority at 188. These cases actually reveal that this court has held that the determination of whether an employee is within the scope of employment turns first on the employee's scope of authority. Far from leading to the majority's conclusion, under our precedent, whether Mr. Rahman was outside the scope of employment for determining the State's liability turns on whether he had implied or apparent authority to transport his wife in the state-owned vehicle. He did not. Indeed, such conduct was expressly prohibited.

A. The Majority Misreads Dickinson and Smith
¶ 33 I agree with the majority that an employee's disobedience of certain workplace rules does not automatically take the employee out of the scope of employment. I do not agree, however, that unauthorized employee action should always result in employer liability, just as I do not agree that an employer is never liable when an employee acts contrary to instructions. Our case law is more intricate and precise than that.
¶ 34 In Dickinson, this court affirmed the test we have adopted for determining whether an employee is, at a given time, acting within the scope of his employment:
"[W]hether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; *191 or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest."
Dickinson, 105 Wash.2d at 467, 716 P.2d 814 (quoting Elder v. Cisco Constr. Co., 52 Wash.2d 241, 245, 324 P.2d 1082 (1958) (citing Greene v. St. Paul-Mercury Indem. Co., 51 Wash.2d 569, 573, 320 P.2d 311 (1958))). Greene, in turn, cites to Smith, in which the court had elaborated and held that "`[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment'" and that an employer may be liable for some negligent acts of his employee, although such an act may be contrary to instructions. See Dickinson, 105 Wash.2d at 470, 716 P.2d 814 (emphasis added) (alteration in original) (quoting RESTATEMENT (SECOND) OF AGENCY § 230 (1958)); see also Greene, 51 Wash.2d at 573, 320 P.2d 311. The reason for this language ("may" instead of "is") reflects the true nature of our careful inquiry, which is expressly spelled out in the Smith case. Smith, 34 Wash.2d at 623-24, 209 P.2d 297.
¶ 35 In Smith, we stated, "`[A]s a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer.'" Id. at 623, 209 P.2d 297 (emphasis added) (quoting 35 AM. JUR. Master and Servant § 559 at 993 (1941)). But general rules come with exceptions:
"In short, when it is asserted that the employee acted without the knowledge of the employer and without his approval, or in violation of his orders and instructions, the question of liability, as in other cases, is determined by whether the employee was in fact acting within the scope of his implied or apparent authority. If he was not, the employer is not to be held liable, although a prohibition by the employer may be a factor in determining, in a doubtful case, whether the act of the employee was incidental to the employment so as to be within the scope thereof."
Id. at 623-24, 209 P.2d 297 (emphasis added) (quoting 35 AM. JUR., supra, § 559, at 993).[2]Smith correctly captures the essence of Washington law. Therefore, the majority's conclusion is not the logical consequence it posits. Instead, whether the Department is liable in this case should turn on whether Mr. Rahman had the implied or apparent authority to transport Mrs. Rahman.[3] The act of transporting his wife, moreover, was not incidental to Mr. Rahman's employment but was instead an independent (and personal) decision not arising as a consequence of his employment.

B. The Majority Misreads McNew and Poundstone
¶ 36 As the language in Dickinson and Smith implicates, our scope of employment analysis requires consideration of whether there has been an authorized or unauthorized *192 act on the part of the employee. A thorough reading of McNew and Poundstone, and the cases they cite, confirms that whether Mr. Rahman was authorized to transport Mrs. Rahman is dispositive of the Department's liability in this case.
¶ 37 In McNew, we again noted that "[i]f the work of the employee creates the necessity for travel, he may be in the course of his employment though he is serving at the same time some purpose of his own." McNew, 37 Wash.2d at 499, 224 P.2d 627 (emphasis added). This statement is made after the court observed that "[t]he general trend of authority is in the direction of holding that, where the employee is combining his own business with that of his employer. . . no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured. . . ." Id. at 497, 224 P.2d 627; majority at 185. In making this statement, the court in McNew cites to several cases in which "[t]hese principles have found expression." McNew, 37 Wash.2d at 498, 224 P.2d 627. Careful reading of these cases reveals yet again that whether an employee's action was authorized goes hand in hand with a complete analysis of the scope of employment. Although an unauthorized action does not always take the employee outside the scope of employment, it is not the irrelevant inquiry that the majority asserts (see majority at 187-88 E.g., Carlson v. P.F. Collier & Son Corp., 190 Wash. 301, 317, 67 P.2d 842 (1937) (employer was vicariously liable in a case involving an automobile accident; the applicable rule hinged on whether the employee's use of the vehicle was either expressly or impliedly authorized by the employer); Carmin v. Port of Seattle, 10 Wash.2d 139, 152, 116 P.2d 338 (1941) (another case involving an automobile accident, affirming Washington precedent that the person injured will not be precluded from recovering from the employer "`if the servant's use of the vehicle was, either expressly or impliedly, authorized by the employer'" (emphasis added) (quoting R.P.D., Annotation, Employer's Liability for Negligence of Employee in Driving His Own Car or Other Vehicle in Employer's Business, 87 A.L.R. 787 (1933) and citing Rice v. Garl, 2 Wash.2d 403, 98 P.2d 301, 304 (1940))); Leary v. Dep't of Labor & Indus., 18 Wash.2d 532, 542-43, 140 P.2d 292 (1943) (holding defendant was in the course of his employment in using his car in an attempt to remove another car so that it would not block the entrance to the gate where defendant was authorized to employ a usual or suitable means to accomplish the employer's purpose). Compare Church v. Dep't of Labor & Indus., 179 Wash. 443, 38 P.2d 234 (1934) (action was within scope of employment, but whether employee had authority to act was not an issue before the court) and Poundstone, 189 Wash. at 499, 65 P.2d 1261 (action was within scope of employment although it was unauthorized in that case, with the majority relying on McQueen v. People's Store Co., 97 Wash. 387, 166 P. 626 (1917)) and Leuthold v. Goodman, 22 Wash.2d 583, 594-95, 157 P.2d 326 (1945).
¶ 38 In Leuthold, the court noted that we have held that a driver's deviation from his authorized line of travel was so marked and continuous as to take him outside the scope of his authority. Leuthold, 22 Wash.2d at 594-95, 157 P.2d 326; Savage v. Donovan, 118 Wash. 692, 694, 204 P. 805 (1922). Although the court in Leuthold held that the employee was acting within the scope of his employment when he used his employer's truck to deliver his own rubbish to the dump and to make a trip to his own home, the court so held because the employer had authorized the employee to take the truck the night before and had instructed him to transport a load of the employer's rubbish to the dump and to work on the vehicle over the weekend at the employee's home. Leuthold, 22 Wash.2d at 587-88, 595-96, 157 P.2d 326.
¶ 39 In sum, the majority patches together parts of McNew, Smith, Dickinson, and Poundstone to support its conclusion. However, as this court cautioned in McNew, "[i]f we should take out of their settings some of the statements made by the foregoing authorities, as well as many others along the same line which might be cited, and apply them literally . . . this would extend the doctrine of liability beyond its true scope." McNew, 37 Wash.2d at 498, 224 P.2d 627. Unlike the majority, I would heed this cautionary note.
*193 ¶ 40 In Poundstone, moreover, we looked to persuasive authority from the Wisconsin Supreme Court, which had reasoned:
"If it were true that a servant is outside the scope of his employment whenever he disobeys the orders of his master the doctrine of respondeat superior would have but scant application, for the master could always instruct his servant to use ordinary care under all circumstances. The servant's negligence would therefore always be contrary to orders and the non-liability of the master would follow. But such is not the law. The servant [in this case] is within the scope of his employment when he is engaged in the master's service and furthering the master's business though the particular act is contrary to instructions."
Poundstone, 189 Wash. at 500-01, 65 P.2d 1261 (emphasis added) (quoting Smith v. Yellow Cab Co., 173 Wis. 33, 180 N.W. 125 (1920)). This is true enough. But the fine point that may be gleaned from the persuasive reasoning in Poundstone, however, is that the rule of law applicable in instances where the employee did not have the authority to act has two parts.
¶ 41 First, it is not the case that an employer should always avoid liability where the employee disregards his employer's instructions, as such a rule could eviscerate the sound doctrine of respondeat superior as the majority in Poundstone suggests.[4] Second, however, it is not the case that an employer is always vicariously liable where the employee disregards his employer's instructions, especially where those instructions specifically define the scope of the employee's authority and define the boundaries and extent of the employer's control over the employee.
¶ 42 An employer cannot avoid all liability simply by instructing his employees to avoid negligence while maintaining the actual control of the employee, which is the fundamental premise behind respondeat superior.[5] In the same way, it is a misapplication of the doctrine to hold that an employer is always liable whenever an employee engages in an unauthorized act.[6]
¶ 43 A full reading of our precedent removes two foundations of the majority's argument: first, that the analysis under McNew, Smith, Poundstone, and Dickinson necessarily results in vicarious liability in this case (it does not) and, second, that the Restatement (Second) of Agency § 242 (1958),[7] relied upon by the trial court, speaks only to the question of apparent authority, not to the scope of employment. These are in fact interrelated issues, as revealed by our case law.

C. The Majority Wrongfully Dismisses Long-Established Precedent: McQueen, Gruber, and Fischer[8]
¶ 44 A third foundation of the majority's argumentthat McQueen, Gruber, and *194 Fischer are not dispositive hereis removed when the implications of our precedent play out. Majority at 187-88. To use the majority's language, "look[ing] behind the language [to] understand the principles at issue" in Dickinson, Smith, McNew, and Poundstone actually reaffirms that McQueen, Gruber, and Fischer continue as controlling precedent. Id. at 188.
¶ 45 In Fischer, a railroad company was held not liable for injuries sustained by a man riding on a passenger train's engine with the permission of the train's engineer. The court so held because the engineer had no real or apparent authority to invite the man to ride. Fischer, 52 Wash. at 471, 100 P. 1005.
¶ 46 In Gruber, a man rented a moving truck belonging to a Spokane moving company to transport some of his household goods across town. Gruber v. Cater Transfer Co., 96 Wash. 544, 544-45, 165 P. 491 (1917). Although not engaged in the business of carrying passengers, the driver of the truck agreed to allow the man to ride along on the back of the truck, so as to give the employees directions about where to put his things when they arrived (both the driver and passenger seats were occupied). Id. at 545, 165 P. 491. Unfortunately, the man fell off or was thrown from the back of the truck and was injured. Id. at 546, 165 P. 491. The court denied the man's claim seeking recovery from the company on the grounds that the "driver did not have authority to invite or permit [the man] to ride upon the truck." Id. at 547, 165 P. 491.
¶ 47 In McQueen, a deliveryman invited two "young ladies" to ride on the running board of his employer-owned delivery vehicle. McQueen, 97 Wash. at 387-88, 166 P. 626. One of the ladies was injured when she jumped or was thrown from the vehicle; she sued the deliveryman's employer for her injuries under the doctrine of respondeat superior. Id. at 388, 166 P. 626. As in Gruber, the court held that the employer was not liable for the injury because the deliveryman, in inviting the ladies to ride, "was not acting within the scope of his employment, there being no question that he had no authority to invite or permit persons to ride with him while delivering merchandise for [his employer]." Id. at 389-90, 166 P. 626. It is unclear whether the deliveryman was expressly told not to have guests in the vehicle, as Mr. Rahman was here, but the court nevertheless noted:
[The deliveryman] was engaged in furthering his own pleasure and not in furthering his master's business. His employment was to drive the truck. In inviting [the ladies] to ride with him, he was neither doing it as a means nor for the purpose of performing that work. It had no connection with his work, either directly or indirectly. In extending this invitation, [the deliveryman] was acting without any reference to the business in which he was employed.
Id. at 390, 166 P. 626. In so holding, the court carefully described how we go about determining the scope of employment in any given case:
While no decisive test can be given for determining whether or not a given act is within the scope of a servant's employment, it is apparent from all the authorities that the act complained of must have been done while the servant was engaged in doing some act under authority from his master; not that, while engaged in the act, he is employed in the master's business; but the act must have been in the furtherance of the master's business and such as may be fairly said to have been either expressly or impliedly authorized by the master.
Id. at 388-89, 166 P. 626; see also Robinson v. McNeill, 18 Wash. 163, 164, 51 P. 355 (1897) (railroad company was not liable for injuries to boys who fell off a hand-car because employee was not authorized to loan them the hand-car; therefore, "his act . . . was entirely outside of and exceeded the scope of his employment").
*195 ¶ 48 The majority asserts that these cases do not address the circumstances here, because McQueen, Gruber, and Fischer dealt with cases in which the plaintiffs were allowed by an employee to ride on a part of a vehicle not designed to transport passengers. Majority at 187 (citing Pierson v. United States, 527 F.2d 459, 463 n. 2 (9th Cir.1975)).[9] This distinction is not justification for a change in the rule of law and was not relied on by this court in these decisions.[10] Whether a vehicle is engineered in a particular fashion does not distinguish these cases from the core issue: regardless of a vehicle's design, both these cases and this case involve a situation in which the employee was not authorized to invite passengers onto a vehicle. Even assuming the majority's distinction is relevant, Mrs. Rahman, like the injured parties in McQueen, Gruber, and Fischer, is also a plaintiff allowed by an employee (Mr. Rahman) to ride on a part of a vehicle not designed [i.e., intended by the employer] to transport unauthorized persons. To be sure, the issue of liability does not pivot on whether Mr. Rahman was authorized to drive the vehicle, but on his lack of authority to transport unauthorized persons. See majority at 187.
¶ 49 As articulated above, Fischer, Gruber, and McQueen all support the conclusion that an employee's authority to act is part of the scope of employment analysis, as do Dickinson, Smith, McNew, and Poundstone. All that remains, then, is the majority's teetering claim that its result reflects sound policy, which itself is not strong enough to justify overruling these cases. In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970) (requiring "a clear showing that an established rule is incorrect and harmful before it is abandoned").

D. The Majority's Result Does Not Reflect Sound Policy

¶ 50 Consider the policies. First, underlying the doctrine of respondeat superior is the notion of authority or control over the alleged wrongdoer. 57B AM. JUR. 2d Negligence § 1096 (2001). As the majority puts it, respondeat superior "rests upon the relationship between an employer and employee, which is characterized by a right of control." Majority at 186. This makes sense: whenever an employee causes some avoidable delay or inconvenience to a new, loyal, or potential customer, for example, it is often good business for the employer to correct his employee's mistakes without charge.
¶ 51 Likewise, in circumstances where the employer retains control over the employee, it makes sense to hold an employer liable for injuries to third parties caused by the employee. Not only is the injured party more likely to be compensated for the injuries (because the employer is more likely to have "deep pockets"), but the employee also remains a direct extension of the employer, such that the injured party could expect the employer to take responsibility for the employee's actions. It makes sense to hold the employer liable where the employer has made an objective representation to the employee or the injured party that the employee is controlled by the employer. But where the employee is not acting with actual or apparent authority, the employer has no control over the employee, and there is no objective manifestation from which such control could be presumed. Without control, therefore, the fundamental justification for respondeat superior is absent.
¶ 52 Second, although the imposition of workplace rules reflects some control of the employee's actions, this alone does not justify a policy of liability per se. Cf. majority at 186. The existence of rules does not mean *196 the employee is in fact controlled, especially where such rules define the scope of employment and are not merely to avoid legal responsibility. Here, Mr. Rahman's scope of employment included accompanying other employees on site inspections and driving a state-owned vehicle to effect that purpose. His employment emphatically did not include transporting unauthorized passengers. While an employer cannot avoid all liability simply by enacting a rule against negligence, neither may the courts impose expansive liability on the taxpayers of this state. Such a policy decision should be left to the legislature to decide and is contrary to our case law as faithfully applied.

CONCLUSION
¶ 53 Mr. Rahman was prohibited from taking his wife on a trip with him in a state vehicle. His unauthorized action caused all resulting injuries. The question of the State's liability under Washington State law should turn on the issue of whether Mr. Rahman was authorized to transport his wife in this state-owned vehicle. Faithful application of this court's precedent (including McNew, Smith, Poundstone, Dickinson, Fischer, Gruber, and McQueen) requires the conclusion that Mr. Rahman was outside the scope of employment. Because Mr. Rahman was not authorized to transport his wife as a passenger in the state-owned vehicle, and indeed was specifically prohibited from doing so, and because the majority's ruling legislates new policy of broad state liability, I respectfully dissent.
WE CONCUR: BARBARA A. MADSEN, Chief Justice and GERRY L. ALEXANDER, Justice.
NOTES
[1] For clarity, we refer to the Rahmans by their first names, intending no disrespect.
[2] Nor, in fairness to the State's argument, is there any suggestion that, had Mohammad's driving behavior run afoul of a workplace rule requiring employees to "`use ordinary care under all circumstances,'" Poundstone, 189 Wash. at 501, 65 P.2d 1261 (quoting Yellow Cab, 180 N.W. at 126), the State would be resisting vicarious liability for Mohammad's negligent driving.
[3] This section was not carried forward in the Restatement (Third) of Agency, adopted by the American Law Institute in 2005 and published in 2006. See 2 RESTATEMENT (THIRD) OF AGENCY 488 (2006) (parallel tables).
[4] This focus reflects the arguments in the parties' briefing in McQueen, which the State provided as an appendix to its response to amicus curiae, Washington State Association for Justice Foundation. In particular, the defendant/appellant's brief quotes the general rule stated in a treatise of the era:

Servants performing duties in respect of vehicles regularly used for the transportation of goods have usually no authority to act as agents, so as to create the relation of carrier and passenger. The general rule established by the cases is that the employer of a servant in charge of a vehicle which is not normally used for the conveyance of persons cannot be held liable for an injury received by a third party, while riding upon it in pursuance of an invitation given by the servant, unless the invitation is shown by affirmative evidence to have been within the scope of his authority.
6 C.B. LABATT, MASTER AND SERVANT § 2499 n. 7, at 7611 (2d ed. 1913).
[5] The Court of Appeals correctly noted that the dissent in Poundstone relied in part on McQueen in arguing against liability for the employee's unauthorized acts, but "that view did not win the day." Rahman, 150 Wash.App. at 355 n. 5, 208 P.3d 566.
[6] While the Court of Appeals relied in part on the California Supreme Court decision in Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 968-70, 227 Cal.Rptr. 106, 719 P.2d 676 (1986), we rest our decision on Washington precedent and do not find it necessary to look to the law in other states in resolving this issue. We also find that the intentional tort cases the State urges us to follow are not on point. See Niece v. Elmview Group Home, 131 Wash.2d 39, 929 P.2d 420 (1997); Thompson v. Everett Clinic, 71 Wash. App. 548, 860 P.2d 1054 (1993); Kuehn v. White, 24 Wash.App. 274, 600 P.2d 679 (1979). The undisputed facts do not suggest that at the time of the accident Mohammad was acting intentionally or solely for personal motives.
[1] McNew v. Puget Sound Pulp & Timber Co., 37 Wash.2d 495, 224 P.2d 627 (1950); Smith v. Leber, 34 Wash.2d 611, 209 P.2d 297 (1949); Poundstone v. Whitney, 189 Wash. 494, 65 P.2d 1261 (1937); Dickinson v. Edwards, 105 Wash.2d 457, 716 P.2d 814 (1986).
[2] Importantly, the Ninth Circuit Court of Appeals in Pierson v. United States quotes Smith to support its argument that "Washington case law clearly indicates that an act done in violation of an express prohibition of the master can be within the scope of the servant's employment `where such an act was done in conjunction with other acts which were within the scope of the duties an employee has been instructed to perform.'" Pierson v. United States, 527 F.2d 459, 464 (9th Cir. 1975) (emphasis added) (quoting Smith, 34 Wash.2d at 623, 209 P.2d 297). Again, using the language "can" instead of "is," the Ninth Circuit's reading of Washington case law is consistent with the law requiring an inquiry as to the scope of authority as part of the analysis necessary to determine whether a given act was within the scope of employment.
[3] When an agent has actual authority to act on behalf of the principal, the agent's exercise of the authority binds the principal. Blake Sand & Gravel, Inc. v. Saxon, 98 Wash.App. 218, 223, 989 P.2d 1178 (1999). Actual authority may be express or implied. King v. Riveland, 125 Wash.2d 500, 507, 886 P.2d 160 (1994). Implied actual authority depends upon an objective manifestation from the principal to the agent. Id. Here, the Department objectively manifested to Mr. Rahman that he did not have authority to transport unauthorized passengers. Mr. Rahman did not have implied authority. Mr. Rahman also did not have apparent authority, which exists only when the principal makes objective manifestations of the agent's authority to a third person. Ranger Ins. Co. v. Pierce County, 164 Wash.2d 545, 555, 192 P.3d 886 (2008) (quoting King, 125 Wash.2d at 507, 886 P.2d 160). Mr. Rahman did not have apparent authority to transport unauthorized passengers because the Department did not make any objective manifestations to Mrs. Rahman.
[4] I would also argue that a workplace rule such as the one posited in the Wisconsin Yellow Cab case is qualitatively different from the type of rule at issue in this case. That is, a blanket rule meant simply to avoid liability, such as "don't be negligent," is qualitatively different from a specific rule or policy that is meant to define the scope of the agent's authority and is imposed for reasons other than mere avoidance of liability (such as ensuring the safety of the employee and of others, regulating the proper use of state-owned property ultimately owned by the taxpayers of Washington State, etc.). Therefore, it strains logic to apply the majority's reading of Poundstone to all workplace rules.
[5] For a history of the development of respondeat superior, see O.W. Holmes, Jr., Agency, 4 HARV. L. REV. 345 (1891) and John H. Wigmore, Responsibility for Tortious Acts: Its History.II., 7 HARV. L. REV. 383 (1894).
[6] Both the Court of Appeals and the majority of this court noted that the dissent in Poundstone relied in part on McQueen; what they do not mention is that the majority in Poundstone also relied on McQueen in holding that "the employer is liable if the act complained of was incidental to the acts expressly or impliedly authorized or indirectly contributed to the furtherance of the business of the employer." Poundstone, 189 Wash. at 499, 65 P.2d 1261; majority at 188 n. 5. As noted by the majority, McQueen describes apparent authority in terms of scope of employment. Majority at 187-88; McQueen, 97 Wash. at 390, 166 P. 626. There can be no doubt, given the case law, that this is because the two concepts are inextricably linked and are not independent inquiries.
[7] Restatement (Second) of Agency § 242 was not carried over into the Restatement (Third) of Agency. Washington State has not adopted either restatement position.
[8] Fischer v. Columbia & Puget Sound R.R. Co., 52 Wash. 462, 100 P. 1005 (1909).
[9] See supra note 2.
[10] The Gruber court did note the nature and purpose of the moving truck in discussing its case. The court stated, "It seems to us that the presumption [that persons riding on certain parts of a vehicle are not lawfully there] is equally strong in this case [where the] driver did not have authority to invite or permit respondent to ride upon the truck, especially in the position which he did ride.". Gruber, 96 Wash. at 547, 165 P. 491. In other words, where the employee does not have authority to transport a passenger, the employer is presumed not to be legally obligated for any resulting injuries to the unauthorized passenger because the unauthorized passenger's presence is completely outside of the master's controlthe very foundation of respondeat superior. Cf. majority at 186.